Mary L. M. Ditch *et al.*

*v.*

John S. Sennott *et al.*

*Filed at Mt. Vernon June 12, 1886.*

1. Will—*election to take under a will—application of the doctrine.* Where a testator devises property to his sons, and also property belonging to them, to another, they must either relinquish their claim to their own property so devised, or to the provision made in their favor. A party can not take under a will and also contrary to it. In such case he must make his election.

2. The doctrine of election does not apply where the testator has but a part interest in an estate which he devises; but even in such a case, if it is apparent from the terms of the will that the testator intended to devise the whole estate, including the interest of a third person, then the doctrine will apply as to such third person, if a devisee.

3. SAME—*whether devise of whole or part interest.* The language in a will, that the testator gives and devises to a son-in-law the south-east fractional quarter of section, etc., containing sixty-two acres, and also part of north-west fractional quarter of section number 21, etc., containing eighteen acres, imports a devise of the whole of the two tracts, although it may be the testator owned only an undivided interest in the same.

4. A testator owning but an undivided interest therein, by his will devised as follows: "I give and bequeath to J. S. one hundred and fourteen acres of land, (describing it,) to be set off to him so as to include all the land I own in said claim and survey, excepting the part of the same already reserved for A. M., and also to include all the lands in said quarter section which I own lying south of the road recently located from T. to East Prairie Union Church." The word "own," did not refer to the undivided interest of the testator, but to the extent of the entire claim in the survey, as appears from a prior clause devising a part of the claim to A. M.: *Held,* that it was evident the testator intended to devise, not his undivided interest in the claim and survey, merely, but the whole estate.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. AMOS WATTS, Judge, presiding.

Mr. SPENCER TOMPKINS, and Mr. THOMAS QUICK, for the plaintiffs in error:

There must be an actual ouster to support the plea of the Statute of Limitations, as between tenants in common. *Noble* v. *McFarland,* 51 Ill. 237; *Nicoll* v. *Scott,* 99 id. 528; *Busch* v. *Huston,* 75 id. 343.

Possession is only notice of such title as the party had. *Lloyd* v. *Karnes,* 45 Ill. 68.

If A devises land to B, and then devises land to C in which B has an interest, the law presumes he only intended to devise so much of the land as he owned, unless, from the context, it clearly appears that the testator meant to devise the entire estate, including the interest of B. 1 Sim. Ch. 105; 18 Ves. Ch. 41; 1 Edw. Ch. 532; 2 Lomax on Executors, 282, 283,

sec. 162; *Rancliff* v. *Parkins*, 6 Dow. 176; *McElfrish* v. *Schley*, 2 Gilm. 182; *Stratton* v. *Best*, 1 Ves. 285; *Doe* v. *Chichester*, 4 Dow. 65; *Timberlake* v. *Parish*, 5 Dana, 845; *Hall* v. *Hall*, 1 Bland, 130.

In general a devise will extend only to such estate as the testator holds in his own right.   2 Redfield on Wills, 360, secs. 16, 17; 2 Jarman on Wills, 20.

Messrs. Winkelman & Talbott, for the defendants in error:

There is no evidence that the deed from S. W. Miles, Sr., to Amanda Sennott, was ever delivered, except the testimony of Mrs. Quick and Mrs. Whiteside, both incompetent witnesses to testify to transactions and conversations with the ancestors of the defendants in error.   *Stone* v. *Cook*, 79 Ill. 424; *Wachter* v. *Blowney*, 104 id. 610; *Waterman* v. *Spaulding*, 51 id. 425; *Connelly* v. *Dunn*, 73 id. 218.

S. W. and Alonzo Miles made no claim to the land devised to James Sennott, for the reason they knew, when they accepted the provision made for them by the will of S. W. Miles, Sr., they released their interest in the land devised by the same will to Sennott.   *Wilbanks* v. *Wilbanks*, 18 Ill. 19; *Brown* v. *Pitney*, 39 id. 470.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill brought by the plaintiffs in error, to partition certain lands in Monroe county.   The lands were located in survey No. 564, claim No. 620, and consisted of two tracts, one of one hundred and fourteen acres, and one of eighty acres, and they were owned originally by Stephen W. Miles, Sr. Miles, the owner of the lands, had a daughter, Amanda C., who married James Sennott.   He also had two sons, Stephen W. Miles, Jr., and Alonzo N. Miles.   On the 29th day of November, 1851, Stephen W. Miles and wife executed a deed which purported to convey the two tracts of land to Amanda C. Sennott.   The deed was acknowledged on the day of its

date, before a justice of the peace, but it was never recorded until September 3, 1884, and it is insisted by defendants in error that the deed was never delivered to the grantee. It will not be necessary to pass upon this question, as the decision of the case may. properly be placed on other grounds. On the 17th day of December, 1854, Amanda C. Sennott died intestate and without issue, leaving as her heirs her husband, James Sennott, her father, Stephen W. Miles, Sr., and two brothers, Stephen W. Miles, Jr., and Alonzo N. Miles. On the 31st day of December, 1859, Stephen W. Miles, Sr., died testate, and in his will he devised a large portion of his estate to his two sons, Stephen W. and Alonzo N. Miles, but the two tracts of land. embraced in the deed to his daughter, Amanda C., he devised to his son-in-law, James Sennott. It appears from the record, that James Sennott went into the possession of the lands as early as 1851, and he and his wife occupied the same together until the death of the wife, in 1854, and after her death he continued to occupy the lands until he died, on or about the 6th day of December, 1862. Sennott died intestate, and from the time of his death, his heirs, and those claiming under them, have continued to occupy the lands until the present time, claiming them as their property. Stephen W. Miles, Jr., died April 16, 1872, and Alonzo N. Miles died February 27, 1877, and plaintiffs in error, who were complainants in the bill, claim title in the lands as heirs of the said Stephen W. and Alonzo N. Miles, deceased. The claim of plaintiffs in error is based, first, on the deed from Stephen W. Miles, Sr., to Amanda C. Sennott, made in 1851; second, that upon the death of Amanda C. Sennott, in 1854, without issue, two-fourths of one-half of the lands descended to her two brothers, Stephen W. and Alonzo N. Miles. On the other hand, defendants in error claim that the title to the lands remained in Stephen W. Miles, Sr., until his death, and then, under his will, passed to James Sennott. as a devise in fee.

So far as appears, no claim whatever was ever made to these lands by either Stephen W. or Alonzo N. Miles, and the claim of title interposed by the complainants in the bill, who claim through and under them, is of recent date. But while we do not hold that complainants are concluded by *laches* or barred by the twenty years' Statute of Limitations set up as a defence in the answer, for the reason that the decision of the case may properly be placed upon other grounds, yet the long continued possession of the defendants under claim of title, sanctioned and acquiesced in by Stephen W. and Alonzo N. Miles, and those claiming under them, may be referred to for the purpose of showing that when Stephen W. and Alonzo N. Miles accepted the provisions of the will of their father, they relinquished any and all interest they might have in the lands in controversy, to James Sennott, to whom they were devised by Stephen W. Miles, Sr., as his own property. That part of the will of Stephen W. Miles, deceased, which relates to James Sennott, is as follows: "I give and bequeath to my son-in-law, James Sennott, *bona fidely*, forever, about one hundred and fourteen acres of land, be the same more or less, being part of the east side of survey No. 564, and claim No. 620, and part of the north-east fractional quarter of section number 27, in township number 2 south, of range 11 west, to be set off to him so as to include all the land I own in said claim and survey, excepting the part of the same already reserved for Alonzo Miles, and also to include all the lands in said quarter section which I own lying south of the road recently located from Trout Hollow to Eagle Prairie Union Church. I also give and bequeath to him the south-east fractional quarter of section number 17, township number 2 south, range number 11 west, containing sixty-two acres and seventy-six hundredths of an acre, and also part of the north-west fractional quarter of section number 21, same township and range, containing eighteen acres."

As before observed, Stephen W. Miles, Sr., by the same will devised a large quantity of property to his two sons, Stephen W. and Alonzo N. Miles, and Stephen W. Miles was named as executor of the will. The provisions of the will were accepted by them, and the question presented is, whether, after having accepted the provisions of the will favorable to them, they can reject such portions of the will as may be in conflict with their interest.

The doctrine of election, as between inconsistent rights, in its application to wills, has been long established, and it is well settled by the authorities. In Story's Equity, sec. 1077, the author, after a concise discussion of the doctrine of election, says: "In short, courts of equity adopt the rational exposition of the will, that there is an implied condition that he who accepts a benefit under the instrument shall adopt the whole, conforming to all its provisions, and renouncing every right inconsistent with it." In *Wilbanks* v. *Wilbanks*, 18 Ill. 19, where a testator devised property belonging to his son, to a third person, and in the same will made a devise to the son, it was held that the son must either relinquish his claim to his own property or to the legacy,—that the son might elect which he would take, but he would be concluded by his election. This decision was based on the rule established by the authorities, that a devisee could not at the same time take under a will and contrary to it. The doctrine of election again arose in *Brown* v. *Pitney*, 39 Ill. 468, and after referring to the authorities bearing upon the question, it was held, "that the beneficiary under a will can not insist that the provisions in his favor shall be executed and those to his prejudice annulled,—he must accept the instrument in its entirety or nor at all." In 1 Jarman on Wills, 386, the doctrine of election is stated thus: "That he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it."

It is true that the doctrine of election has no application to a case where the testator has but a part interest in an estate, and such interest only was devised; but in such case, where it is apparent from the terms of the will that the intention of the testator was to devise the whole estate, including the interest of a third person, then the doctrine of election will apply. Here, we think the intention of the testator was manifest to convey the whole estate. As to the two last tracts devised there can be no doubt in regard to the intention of the testator. The language used is: "I give and bequeath to him the south-east fractional quarter of section number 17, township number 2 south, range number 11 west, containing sixty-two acres and seventy-six hundredths of an acre, and also part of the north-west fractional quarter of section number 21, same township and range, containing eighteen acres." By this devise the testator does not devise an undivided interest or a part of the title, but the whole of two tracts of land, consisting of sixty-two acres and seventy-six hundredths of an acre, and eighteen acres. The language used will admit of but one construction,—a clear intention to dispose of the whole estate regardless of who might be seized of the title. As to the first tract devised, the intention is not so clear, but when all the language used in the devise is considered, we think the intention was to give to James Sennott the whole estate in the tract of land, containing one hundred and fourteen acres. In the first part of the devise the testator says: "I give and bequeath to James Sennott one hundred and fourteen acres of land," (describing it.) Had nothing more been said, there could be no doubt in regard to the intention to devise the whole estate in and to the tract containing one hundred and fourteen acres; but following the description is this language: "To be set off to him so as to include all the land I own in said claim and survey, excepting the part of the same already reserved for Alonzo Miles, and also to include all the lands in said quarter section which I

own, lying south of the road recently located from Trout Hollow to Eagle Prairie Union Church." The word "own," as used, did not refer to the undivided interest of the testator in and to the title of the tract of land, but it had reference to the extent of the entire claim in survey No. 564. If this was not the case, the testator would not have devised one hundred and fourteen acres of land, which embraced the entire claim in the survey.

This view is strengthened by reference to a former clause in the will, wherein a part of this claim was devised to Alonzo Miles, which is excepted from this devise. By referring to that clause it will be found that the testator devised, without any qualification whatever as to his interest in the estate, eighty acres of land off the west side of said claim and survey, to Alonzo Miles. This clause of the will, considered in connection with the entire clause following, we think shows plainly that the intention of the testator was to devise, not an undivided interest in the claim and survey in question, but the whole estate. We more readily adopt this construction of the will from the fact that it is apparent from the record that Stephen and Alonzo Miles, who alone were interested in defeating this construction of the will, acquiesced and assented to that provision of the will in which the lands in question were devised to Sennott. They never set up any claim to the lands devised to Sennott, although he was in the open and notorious possession and use of the same, claiming as owner. One of them leased a portion of the lands from Sennott or his heirs, and paid rents therefor. In addition to these facts, after the death of Sennott the lands in dispute were partitioned, by decree of court, among his heirs, and Stephen Miles, Jr., acted as one of the commissioners in making the division, and never intimated that he or his brother had any claim or interest therein. These and other facts of a kindred character show plainly that Stephen and Alonzo Miles assented to the devise made to Sennott, and when they

24—117 ILL.

accepted the provisions of the will of Stephen W. Miles, Sr., they released all interest they had or might have in the lands devised by the same will to Sennott.

This view of the case renders it unnecessary to consider whether the deed from Miles to his daughter was delivered or not. Upon what ground the circuit court dismissed the bill the record does not disclose, nor is it material. It is enough that complainants failed to establish proper ground for relief.

The decree of the circuit court will be affirmed.

*Decree affirmed.*