[No. 11214.  In Bank. — November 7, 1887.]

IN THE MATTER OF THE ESTATE OF FRANK STEW-ART, DECEASED.

WILL — ELECTION — COMMUNITY PROPERTY — INTENTION OF TESTATOR. — Upon a review of the language of the will in question, and of the circumstances under which it was made, *held*, that it was the intention of the testator to dispose of the entire community property as his own, to the exclusion of any claim therein by his wife, and that she was put to an election between the provisions of the will and her right as his surviving wife to one half of the community property.

APPEAL from an order of the Superior Court of San Joaquin County distributing the estate of a deceased person.

The testator, Frank Stewart, died on the 27th of July, 1883, leaving an estate of the value of $429,457, which was entirely community property. He left a surviving wife, but no descendants. The material portions of his will, which was duly admitted to probate, are as follows: —

" 1. After all my just debts are paid, I give and bequeath to my beloved wife, Bettie Stewart, one half of all my estate; the southeast quarter ($\frac{1}{4}$) of block No. 113,

east of Center Street, in the city of Stockton, including my present residence, and all of the balance of the east half of said block No. 113, except one hundred feet of the north half of said block fronting on Hunter Street, by one hundred and fifty feet on Flora Street; also all the household and kitchen furniture, to be taken by her at ten thousand dollars, if she choose to accept such property at that price, to be included in the one half of my estate; also give and bequeath to her in cash the sum of three thousand dollars, to be paid to her from the first sales of property, and at once; also give and bequeath to my beloved adopted daughter, Bessie Stewart Payne, twenty shares of stock of the Stockton Building and Loan Association; . . . . 7. The remainder of my estate to be distributed equally between my brother and sisters, in four parts; that is to say, to William M. Stewart, Amanda Brown Harris, and Lou V. Moore, and the living heirs of my deceased sister, Betty Ann Winn,—the heirs to be counted as one of the inheritors,—and the four to have share and share alike."

Pending the settlement of the estate, the testator's widow filed the following acceptance:—

"*To the Honorable the Superior Court of said County of San Joaquin:* I, Bettie Stewart, the surviving wife of Frank Stewart, deceased, respectfully represent that in and by the last will of said deceased, duly admitted to probate by this court on the twenty-second day of August, 1883, the said deceased gives and bequeaths to me one half of all his estate; the southeast quarter of block 113, east of Center Street, in the city of Stockton, in said county, including his late residence, and all of the balance of the east half of said block No. 113, except one hundred feet of the north half of said block fronting on Hunter Street, by one hundred and fifty feet on Flora Street; also all the household and kitchen furnitur[e] be taken by me at ten thousand dollars, if [I] choose to accept said property at that price,

cluded in the one half of the estate of said deceased; that I hereby make known my election, and accept the said real and personal property under the terms of said will for the said sum of ten thousand dollars, to be included in the one half of said estate.

"Dated April 28, 1885.     Mrs. Bettie Stewart."

Upon proceedings for the distribution of the estate, the widow claimed to be entitled to one half of the community property as the survivor of the community, and also to the devises and bequests provided for in the will, to be paid out of the testator's share of the property. The court, however, found that from the language of the will, and the circumstances under which it was made, it was the intention of the testator to dispose of the entire community property as his own, to the exclusion of any claim therein by his wife; and that she was put to an election between her right to one half of the community property, as survivor of the community, and the provisions made for her by the will. A decree of distribution was rendered accordingly, from which the widow appealed. The further facts are stated in the opinion of the court.

*Aug. Muenter,* for Appellant.

The appellant, as surviving wife, is entitled to one half of the community property, and also to the devise and bequest out of the share of the testator. (Civ. Code, secs. 172, 1402; *Beard* v. *Knox,* 5 Cal. 252; 63 Am. Dec. 125; *Estate of Buchanan,* 8 Cal. 507; *Smith* v. *Smith,* 12 Cal. 217; 73 Am. Dec. 533; *Scott* v. *Ward,* 13 Cal. 458; *Payne* v. *Payne,* 18 Cal. 292; *Morrison* v. *Bowman,* 29 Cal. 350; *Estate of Silvey,* 42 Cal. 210; *Greiner* v. *Greiner,* 58 Cal. 119; *King* v. *Legrange,* 50 Cal. 333; 61 Cal. 222; *Estate of Frey,* 52 Cal. 660.) There is nothing in the manifesting an intention to put the appellant to an between the benefit under the will and her in- community property. (1 Story's Eq. Jur.,

sec. 632 a; 1 Pomeroy's Eq. Jur., secs. 493, 503–505; *Norris* v. *Clark*, 10 N. J. Eq. 51; *Mills* v. *Mills*, 28 Barb. 454; *Fuller* v. *Yates*, 8 Paige, 325; *Church* v. *Bull*, 2 Denio, 430.)

*Stanton L. Carter*, and *D. S. Terry*, for Residuary Legatees and Respondents.

The testator, by his will, manifested an intention to dispose of the entire community property. This was sufficient to put the appellant to an election. (*Noe* v. *Splivalo*, 54 Cal. 209; *Morrison* v. *Bowman*, 29 Cal. 351; *Welch* v. *Huse*, 49 Cal. 509.)

*W. L. Dudley*, for Executors.

The Court.—There is no merit in the motion to dismiss the appeal herein. It is therefore denied.

No citation of authorities is required to show that a will is to be construed according to the intention of the testator. Such is the rule prescribed by the code; it is elementary; it has always been a cardinal canon. As said in *Morrison* v. *Bowman*, 29 Cal. 337, the intention of the testator is to be kept in view as the pole-star in the construction or interpretation of the will.

The language of every clause in the will before us bears evidence of the fact that the testator intended to deal with the whole of the community property; and all the provisions of the will taken together afford most convincing proof of the fact that he believed he was dealing with the whole of the community property when he used the words "all my estate." He speaks of the home place as "my residence," and deals with the household and kitchen furniture as his own, regardless of any claim or right in his wife. He disposes of certain shares of stock as if no one but himself had any interest therein. He refers to a certain stock of grain, and the business in connection therewith, as "my [his] grain business," when he must have known (if he was dealing with a half-

interest only) that his wife would take the other half by operation of law, and with his executors would have the right to control and manage the same after his death; and provides that Major Batte shall wind up the business, and fixes his compensation at two thousand dollars therefor. The estate is worth nearly half a million dollars. According to the contention of appellant, the widow, by operation of law and the provisions of this will, will take three fourths of the whole estate. It is singular, indeed, if the testator knew that his wife was to receive under the law and the first clause of the will over three hundred thousand dollars in bank stock and lands, that he should have been so anxious to have sales of property made at once in order that she might be paid three thousand dollars upon which to live. It is not at all likely that a husband who loved his wife so much that he desired her to have three fourths of this great estate would ask her to pay ten thousand dollars for one half of his half-interest in a piece of property, the whole of which, appellant admits, was worth only about fourteen thousand dollars, and that, too, for the property which had been the home of himself and his beloved wife, and the sanctuary of his household gods. Furthermore, if the testator intended the debts to be paid out of his estate, he knew that if the specific legacy of three thousand dollars should be paid to his wife, twenty shares of stock and thirty-five thousand dollars in cash to his adopted daughter, Bessie, twenty-five hundred dollars to one nephew, and the same amount to another, one thousand dollars to Katie, the niece of his wife, five thousand dollars to the Stockton Free Library, two thousand dollars to Batte, and that his wife would, by operation of law and the terms of his will, receive three fourths of the whole of the estate, there would be nothing left after the payment of the costs and expenses of administration, for his sisters and brother. It is admitted that he was a careful business man of more than ordinary ability, and of course

he knew the value, character, and extent of his property.

When read together, the provisions of the will are the best expression—short of a direct statement to that effect—that he was dealing with the whole of the community property under the phrase "all my estate." Every clause in the will bears a clear and indisputable badge of that intention. He dealt with the property just as he had been accustomed to deal with it through a long, active, and successful business life; just as he had in accumulating and disposing of the property during his lifetime,—without consulting his wife, or asking her to join with him in any conveyance. He uses the phrase "my estate" in the sense that he had been accustomed to use it all his life. It *was* his estate. He could dispose of it absolutely without the consent of his wife during his life, and he thought undoubtedly that he could do so, and that he was doing so, by his will.

It is to be regretted that the presumption which prevails in New York and other states where the right of dower exists was ever applied to the construction of wills in this state. In those states, in order to cut off the right of dower, the wife must join in the conveyance. With us there is no estate in dower (Civ. Code, sec. 173), and the husband is taught through a long and active business life to regard the community property as his own, to speak of it as his own, and to dispose of it as his own. It is true that the presumption referred to as applicable in other states has been adopted here, and it is perhaps well that we should adhere to it; but where the intention of the testator is so clearly expressed as it is in the will before us, that presumption must give way. So long as our laws recognize the right of the husband to dispose of his property by will, the courts should strive to carry out the real intention of the testator, and for that purpose give greater weight to the natural and ordinary meaning of the language used in the will than

to mere presumptions of law, which are intended as aids for the construction of wills in doubtful cases only.

" The widow, having accepted the devises and bequests provided for her by the will, thereby made her election and confirmed the disposition made by her husband of the common property." (*Noe* v. *Splivalo,* 54 Cal. 209; *Morrison* v. *Bowwan, supra.*)

The decree and order are affirmed.

McFARLAND, J., THORNTON, J., and SHARPSTEIN, J., dissented.