[Civ. No. 4214. Second Appellate District, Division Two.—May 22, 1923.]

In the Matter of the Estate of JAMES C. MOORE, Deceased. MARY J. S. MOORE, Appellant, v. MOLLIE C. H. MOORE, Respondent.

[1] ELECTION—BASIS OF DOCTRINE—EQUITY.—The doctrine of election rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that anyone who asserts an interest under an instrument is bound to give full effect, so far as he can, to that instrument; and he who accepts a benefit under a deed or will must adopt the contents of the instrument as a whole, conforming to all of its provisions and renouncing every right inconsistent with it.

[2] WILLS—DISPOSITION OF COMMUNITY PROPERTY—INTENT OF TESTATOR—INFERENCE—CONFIRMATION.—Though an intention on the part of the husband to dispose by his will of his wife's share of the community property will not be readily inferred, and will never be inferred where the words of the gift may have their fair and natural import by applying them only to the one-half of the community which he has the power to dispose of by will, yet when from the terms of the will it appears that the testator did intend to dispose of his wife's share of the testamentary property as well as the undivided half which is subject to his testamentary power, then, if the widow accepts a legacy or devise under the will—which acceptance necessarily operates to give effect to the will an entire disposition by the testator—such acceptance must, by the conditions on which it is founded, be held to be a confirmation of the disposition of the will.

[3] ID.—INTENTION — ELECTION OF WIDOW. — In such cases, the controlling question is the intention of the testator, as manifested by

---

2. What constitutes election to take under or against will, note, 49 L. R. A. (N. S.) 1072.

the language of his will; and if it clearly appears that he in-
tended to dispose of his wife's as well as his own interest in the
community property, his widow will be put to her election.

[4] ID.—BEQUEST OF "ALL" OF LOT — INTEREST INTENDED — BELIEF.—
Where a testator by his will gives and bequeaths "all" of a
certain designated lot to his sister, and in the will declares that
such lot "was originally purchased by me out of a considerable
sum of money coming out of my deceased mother's property, and
purchased as a home for her," but to which "she never received
a properly recorded deed," and in a will previously made by him
he referred to the property as "my noncommunity property," it
is apparent that he was acting under the belief (even though mis-
taken) that the lot was not the property of the marital com-
munity and that it was his intention to devise the lot as an en-
tirety to his sister, regardless of any right which might be
asserted on behalf of the marital community.

[5] ID.—DISPOSITION OF COMMUNITY PROPERTY—BEQUEST TO SISTER—
ELECTION BY WIDOW.—Under a will whereby the testator disposes
of the community property by first devising to his sister "all" of
a certain specified lot with the improvements thereon, and then by
devising all the residue of his estate, one-half to his wife and
the other one-half to his children in equal shares, the surviving
wife is put to an election whether she will take under the will
or under the law with respect to community property.

APPEAL from a decree of distribution of the Superior
Court of Los Angeles County. John M. York, Judge.
Modified and affirmed.

The facts are stated in the opinion of the court.

William Hazlett and Merton A. Albee for Appellant.

Simpson & Simpson for Respondent.

FINLAYSON, P. J.—Mary J. S. Moore, the sister of
James C. Moore, deceased, appeals from that part of the
decree of final distribution which distributes to her an un-
divided one-half of, instead of the whole estate in, that cer-
tain parcel of land which is situated in the city of Los
Angeles and which for convenience will be referred to herein
as the "Ceres Avenue property."

The lower court found that all of the decedent's estate
was community property. One of the questions presented
for decision and the one upon which this appeal will be

decided is whether under the terms of the will the widow, Mollie C. H. Moore, was entitled to take the one-half of the community property which devolved upon her by law and in addition thereto her interest in the other moiety thereof as given to her by the will, or whether she was put to an election between the provisions of the will and of the law in respect to such property. The lower court held that the widow was not required to elect, and distributed to her not only the undivided one-half which devolved upon her under the statute but also the interest in the other moiety which the will gave to her.

James C. Moore died July 8, 1919, leaving an estate consisting of eight parcels of land in the city of Pasadena and the Ceres Avenue property in the city of Los Angeles. He was a resident of the county of Los Angeles continuously from 1903 to the time of his death. By his last will, executed May 18, 1919, he devised the Ceres Avenue property to his sister, the appellant here, and all the rest and remainder of his property to his wife and his six children. The only provisions of the will which we need notice in our present inquiry are the following:

"II. I give, devise and bequeath to my beloved sister Mary J. S. Moore, of Los Angeles, California, all of lot No. five (No. 5) of E. M. Funk Subdivision of Valenzuela Tract in Los Angeles, California, with the improvements thereon, and known as the 714 Ceres Ave. property, and originally purchased by me out of a considerable sum of money coming out of my now deceased mother's property, and purchased as a home for her and to which she never received a properly recorded deed.

"III. All the rest and residue, and any remainder of my estate, both real and personal, wherever situated and of which I die seized or possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath as follows: One-half (½) thereof to my beloved wife Mollie C. H. Moore, and the remaining one-half (½) thereof I give, devise and bequeath to my beloved sons and daughters, Hester Elizabeth Armstrong, Zephyr A. Moore, Pleasant Ruth Moore, Jas. C. Moore, Jr., Paul J. Moore, and Miriam H. Moore, to be divided and shared among them according to their merits, needs and several abilities to rightly use the same."

Decedent and the respondent, Mollie C. H. Moore, were married at Knoxville, Tennessee, in 1890, where decedent's mother, Elizabeth Moore, owned a home. The newly married couple lived for a while with decedent's mother, until James bought a home of his own in Knoxville. On August 4, 1903, and before moving to Los Angeles, decedent purchased the Ceres Avenue property for the sum of $3,000. The purchase price was paid in installments. The final payment, amounting to $957.89, was not made until some time in 1913. Before the property was fully paid for, namely, on March 4, 1907, James C. Moore received from his vendors a deed to the Ceres Avenue property. His mother and sister came to Los Angeles in 1902, and shortly after the purchase of the Ceres Avenue property in 1903 they made that their home until the mother's death in 1909. Thereafter it was occupied by the sister. James and his wife, after coming to California, resided in Pasadena. The Ceres Avenue property seems to have been purchased in part from the proceeds of the sale or mortgage of the mother's property in Knoxville, in part from the proceeds of the sale or mortgage of the son's Knoxville property, and in part from the latter's earnings acquired subsequent to the time when he and his wife moved to Los Angeles County and took up their domicile in this state.

It would seem that James C. Moore intended that the Ceres Avenue property should be purchased for and regarded as the property of his mother, to be occupied by her and his sister as their home. Indeed, by a written assignment dated March 22, 1904, he transferred to his mother his contract to purchase this property. His wife joined him in making this assignment to the mother. It recites a consideration of "one dollar, with divers other considerations." Later the son deeded the property to his mother by a deed dated April 5, 1907. His wife did not join with him in the execution of this deed, nor was that instrument ever recorded. Notwithstanding the assignment to the mother of the contract of purchase and the son's execution of the unrecorded deed to his mother, the Ceres Avenue property has been treated by the parties to this litigation as a part of the son's estate. It was inventoried as a part of his estate; it is described as a part of his estate in respondent's petition for distribution; and appellant, in her written objec-

tion to the petition for distribution and also in a certain
written stipulation entered into by her in the course of the
trial, treats the property as a part of her brother's estate.
Therefore the assignment of the contract and the deed to
the mother, if they may be considered in the present pro-
ceeding for any purpose whatever, are relevant only in so
far as they may have a tendency to show that James C.
Moore considered that such interest as he had in the Ceres
Avenue lot was his own separate property and not the prop-
erty of the community. Indeed, by a previous will, executed
May 26, 1911, which was after his mother's death, Mr. Moore
devised the Ceres Avenue property to his sister by a clause
which reads as follows: "I will *my non-community* property
—one house and lot at what is now 714 Ceres avenue—to
my sister Mary J. S. Moore." (Italics ours.) The only
reason for adverting to these facts is that they are circum-
stances tending to explain why 'it was that the testator
used the language which he employed when devising the
Ceres Avenue property to his sister by his last will. They
shed some light upon the question whether it was his in-
tention to devise to his sister all the estate in the lot or only
a moiety thereof; and under the doctrine of election the
testator's intention is the crux of the problem, in so far at
least as the case must turn upon the interpretation to be
placed upon the testator's will.

Having found that all of the estate of James C. Moore,
including the Ceres Avenue property, was community prop-
erty, and having concluded that the widow was not put to
her election, the trial court distributed the estate as fol-
lows: To the sister, the appellant here, an undivided one-
half of the Ceres Avenue property; to the widow, as her
part of the community property passing to her by operation
of law, an undivided one-half of all of the property belong-
ing to decedent's estate, including an undivided one-half
of the Ceres Avenue property; to the widow, under the will
and in addition to the undivided one-half coming to her
by operation of law, an undivided one-fourth of all of the
property other than the Ceres Avenue property; and to the
six children, in equal shares, the remaining undivided one-
fourth of all the property other than the Ceres Avenue
property, the same to be held in trust for them by their

mother under a trust clause of the will which we have not deemed it necessary to set forth.

It will be noticed that the widow received under the will, in addition to her statutory community interest in the Pasadena lots, one-half of the remaining undivided half of those lots. That is, by taking under the will she was entitled to receive, and there was in fact distributed to her, an undivided three-fourths of those properties. These parcels of land in Pasadena formed a very considerable bulk of the deceased husbands's estate; and from the fact that the widow entered into a certain stipulation referred to in the latter part of this opinion it would seem that she deemed an undivided three-fourths interest in the Pasadena lots to have a greater value than would be possessed by her mere statutory community undivided half interest in all the property of the estate.

As we have stated, appellant appeals from that part of the decree of distribution which distributes to her but an undivided one-half of, instead of all of the estate in, the Ceres Avenue property. Her principal points on this appeal are: (1) That the evidence does not support the finding that the Ceres Avenue property was community property; and (2) that if that property did belong to the community the widow was put to her election; that the latter elected to take under the will, and that therefore she may not now assert her statutory right to an undivided one-half of the Ceres Avenue property, but that all of the estate therein should have been distributed to appellant under the will. We do not find it necessary to consider the first point, i e., whether the evidence supports the finding that the Ceres Avenue lot was community property, for we think that if that parcel of land was, as found by the lower court, the common property of the spouses, the will of James C. Moore, in so far as it makes a devise of the Ceres Avenue property to his sister, was one whose terms forced an election upon the widow and that the latter has made her election to take under the will.

[1] The doctrine of election rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that anyone who asserts an interest under an instrument is bound to give full effect, so far as he can, to that instrument. Or, as it

is sometimes expressed, he who accepts a benefit under a deed or will must adopt the contents of the whole instrument, conforming to all of its provisions and renouncing every right inconsistent with it. In testamentary law, election, says the court in *Morrison* v. *Bowman*, 29 Cal. 347, 348, citing Story's Equity Jurisprudence, "is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases when there is a clear intention of the person from whom he derives one that he should not enjoy both . . . ; a person cannot accept the benefit intended for him and at the same time reject the will by asserting, in opposition to it, his own inconsistent proprietary rights." A widow is put to her election where she would receive, if she took under the will, something which she would not otherwise be entitled to as community owner. (*Smith* v. *Butler*, 85 Tex. 126 [19 S. W. 1083]; *Zinn* v. *Farmer* (Tex. Civ. App.), 243 S. W. 523–526.) That was the case here; for, by electing to take under the will, the widow received an undivided three-fourths of the Pasadena properties instead of only an undivided one-half thereof.

Before looking to the particular language of the will let us notice some of the rules of law applicable to the construction of such instruments when the question of election is involved, always remembering that the intention of the testator is to be kept in view as the pole star in the construction or interpretation of his will. In the absence of a manifest intention on the testator's part it will not be presumed that he designed to devise or bequeath any property over which he did not possess the power of testamentary disposition. (*Morrison* v. *Bowman, supra.*) Of two possible constructions, that which favors the conclusion that the testator was disposing only of his own moiety of the common property will be adopted. This, says the court in *In re Smith*, 108 Cal. 115, 119 [40 Pac. 1037], is the scope of the doctrine in *Silvey's Estate*, 42 Cal. 210; *In re Gwin*, 77 Cal. 313 [19 Pac. 527], and *In re Gilmore*, 81 Cal. 240 [22 Pac. 655]. **[2]** But though an intention on the part of the husband to dispose by his will of his wife's share of the community property will not be readily inferred, and will never be inferred where the words of the gift may have their fair and natural import by applying them only to the

one-half of the community which he has the power to dispose of by will, yet when from the terms of the will it appears that the testator did intend to dispose of his wife's share of the community property as well as the undivided half which is subject to his testamentary power, then, if the widow accepts a legacy or devise under the will—which acceptance necessarily operates to give effect to the will as an entire disposition by the testator—such acceptance must, by the conditions on which it is founded, be held to be a confirmation of the dispositions of the will. (*Morrison.* v. *Bowman, supra.*) [3] The controlling question is the intention of the testator, as manifested by the language of his will; and if it clearly appears that he intended to dispose of his wife's as well as his own interest in the community property, his widow will be put to her election.

The difficulty of ascertaining the testator's intent is generally, if not always, greater where he has a partial or limited interest in the property devised than where he undertakes to dispose of property in which he has no interest whatever. In the former case the presumption is that he intended to dispose of that which he might properly devise, and nothing more; and this presumption will always prevail unless the intention is clearly manifested by demonstration plain, or necessary implication, on the part of the testator to dispose of the whole estate. Where he has only a limited or conditional interest in the property which he affects to dispose of by will, as, for instance, where it is community property, and he uses *general* words in disposing of it, such as "all my estate," "all my lands," and the like, no question of election arises. In such cases the testator's language can have full effect when applied only to that share or interest of which he has the absolute power of disposal, and he will be presumed to have intended to give only that estate or interest which is thus subject to his testamentary power. Examples of such wills are to be found in the cases relied upon by respondent: *In re Gilmore, supra, Estate of Silvey, supra, In re Wickersham,* 138 Cal. 355 [70 Pac. 1076, 71 Pac. 437], and *In re Prager,* 166 Cal. 450 [137 Pac. 37]. But a wholly different question is presented where the testator, having a limited or partial interest in a particular piece of property, does not employ *general* words of description and donation, such as

"all my estate" and the like, but describes the property *specifically*. In such cases the language of the devise is such as is suitable to a disposition of the particular piece of property as an entirety. Thus in *Penn* v. *Guggenheimer*, 76 Va. 847, the court says: "Generally when the testator has an undivided interest in certain property, and he employs general words in disposing of it, as 'all my lands,' or 'all my estate,' no case of election arises from it; for it does not plainly appear that he meant to dispose of anything but what was strictly his own. (2 Story's Equity Jurisprudence, sec. 1087; Pomeroy's Equity Jurisprudence, 3d ed., sec. 489.) A case of election does arise, however, when the testator, having an undivided or partial interest in an estate, devises it specifically thus indicating a purpose to bestow it as an entirety. The rule on this subject is thus laid down in Pomeroy's Equity Jurisprudence, section 489. Where the testator proposes to give the whole thing itself, using language which by reasonable intention must necessarily describe and define the whole *corpus* of the thing in which his *particular* interest exists as a distinct and identified piece of property, then an intention to bestow the whole, and not merely the testator's individual share, must be inferred, and a case for an election arises." To the same effect are *Smith* v. *Butler, supra; Skaggs* v. *Deskin* (Tex. Civ. App.), 66 S. W. 793; *Zinn* v. *Farmer, supra,* and *Pratt* v. *Douglas,* 38 N. J. Eq. 516, 537, a case involving the doctrine of election under the community system obtaining in this state. (See, also, *Waggoner* v. *Waggoner,* 111 Va. 325 [30 L. R. A. (N. S.) 644, 68 S. E. 990], and *Ditch* v. *Sennott,* 117 Ill. 362 [7 N. E. 636].)

[4] Let us now apply these principles to the case under consideration. The particular parcel of land devised to appellant is described specifically and as an entirety. The language of the will is: "I give and bequeath to my beloved sister . . . *all* of lot No. five," etc. This language is such as would be suitable in disposing of the whole property. The testator purports to give the *whole thing itself,* using language which, by reasonable interpretation, necessarily describes and defines, as a distinct and identified piece of property the whole *corpus* of the thing in which his partial and testamentary interest exists. The language of this devise is ample, complete, and correct for the purpose of disposing

of the *corpus* of the lot and every estate therein, but is wholly inapplicable to a gift of a mere moiety. Not only this, but, by declaring in his will that the lot which he was devising to his sister "was originally purchased by me out of a considerable sum of money coming out of my now deceased mother's property, and purchased as a home for her," but to which "she never received a properly recorded deed," the testator clearly evidences his belief that the lot was not property of the marital community, but was property all of which, after his mother's death, he could devise to his sister unembarrassed by any claim which his widow might rightfully assert. This belief is further evidenced by the fact that in the will previously made by him he refers to the Ceres Avenue property as "my non-community property." It is of no moment that he was mistaken in his belief that the lot was not the common property of himself and wife. His intention to devise the lot as an entirety, regardless of any right which might be asserted on behalf of the marital community, is the controlling factor. It is the testator's *intention*, and not the ground upon which that intention rests, that must control in the interpretation of his will. A mistaken belief on the part of a testator that he has the unrestricted power to dispose of the property absolutely is immaterial. Underhill (2 Law of Wills, sec. 736) states the rule as follows: "It is not material, in determining whether a party is put to an election, that the testator, in disposing of that person's property, was in error as to its ownership, or that the testator in fact knew that he had no title to it." (See, also, Alexander's Commentaries on Wills, sec. 814, p. 1180.)

[5] The testator's intention that the *corpus* of the lot, and not merely his community interest therein, should go to his sister, read into the terms of his will, was sufficient to put his widow to her election. (*In re Smith, supra.* See, also, *In re Stewart*, 74 Cal. 98 [15 Pac. 445].)

Having reached the conclusion that the widow, by the provisions of her husband's will, was put to her election, and that she could not and cannot choose both her own community interest in the Ceres Avenue property and the devises made in her favor, the next question is: Has she made such election?

That part of the decree which distributes to the widow an undivided three-fourths of the Pasadena property has become final, no appeal having been taken therefrom. Of this undivided three-fourths, one-third thereof, i. e., an undivided one-fourth of the Pasadena lots, was received by the widow under her husband's will and solely by reason thereof. Moreover, a written stipulation was entered into prior to the entry of the decree of distribution, but after the evidence was all in and after the learned trial judge had orally announced from the bench what his decision would be, whereby it was stipulated that if it should finally be determined that the widow was put to her election then and in that event she should be deemed to have elected to take under the will. In view of this stipulation, thus solemnly entered into, and our conclusion that by the terms of her husband's will she was put to her election, it must be held that the widow has elected to take under the will, and that therefore the Ceres Avenue property and every estate therein should be distributed to the appellant, Mary J. S. Moore. "The widow, having accepted the devises and bequests provided for her by the will, thereby made her election and confirmed the disposition made by her husband of the common property." (*In re Stewart, supra.*)

A new trial will not be necessary, since the facts as found by the trial court in its final decree of distribution, taken in connection with the stipulation to which we have just adverted, fully support the conclusion that appellant is entitled to have distributed to her the *corpus* of the Ceres Avenue property, including all estate therein, to the exclusion of any claim on the part of the widow.

The cause is remanded, with directions to the trial court to modify its decree of distribution to conform with the views expressed herein, and as so modified it will stand affirmed.

Works, J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 21, 1923, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1923.