[L. A. No. 24167.   In Bank.   May 24, 1957.]

Estate of MERLAND JOSE WOLFE, Deceased. LEANORE L. WOLFE, Appellant, v. TROI C. WOLFE, Respondent.

Church, Howard & Stevens and Charles F. Howard for Appellant.

Paul R. Hutchinson for Respondent.

SHENK, J.—Leanore L. Wolfe, the sister of the decedent, Merland J. Wolfe, appeals from a judgment in a proceeding to determine heirship. The court held that Troi C. Wolfe, the surviving wife, was not required to elect between the interests conferred upon her by her deceased husband's will and her

rights as the surviving member of the community. The sister contends that this was error and that the surviving wife should have been required to make an election.

Merland and Troi Wolfe were married in 1935. In 1937 Mrs. Wolfe filed a complaint for divorce against her husband. The action did not go to trial and was dismissed in 1940 upon the filing, by Mrs. Wolfe, of a second complaint for divorce. Upon the trial of the second action, an interlocutory decree was entered in favor of Mrs. Wolfe. Shortly thereafter, she left California on a trip to New York. Upon her return, three weeks later, the parties agreed to a reconciliation. Thereupon, Mrs. Wolfe resumed living with her husband and continued to do so until he died on November 24, 1952. In 1943, the second divorce action was dismissed without the entry of a final decree.

In conjunction with the second divorce action two property settlement agreements were entered into between the parties. The first, which divided the community property, contained releases of after-acquired property. The husband also waived all right, title and interest in and to four shares of stock in a corporation formed for the operation of his garage business. The second agreement, entered into after the entry of the interlocutory decree, provided that Mrs. Wolfe would sell and Mr. Wolfe would buy the shares of stock settled upon Mrs. Wolfe by the first agreement. Payment was to be made in installments. No payments were ever made. By 1942, when the corporation was dissolved, the stock had been transferred to the husband and the assets of the corporation were distributed to him. The garage was thereafter operated by the husband as sole proprietor. Mrs. Wolfe testified that the parties thereafter never discussed the property settlement agreements.

In 1941, the husband purchased certain real property, title to which was taken in the name of "Merland J. Wolfe, a married man." The property was purchased from the earnings of the garage business. It was subsequently sold and the husband took back a deed of trust in his own name. The proceeds of the sale were used to purchase ranch property in Northridge which is the principal asset of the estate. Title to the Northridge property was taken in the name of "Merland J. Wolfe, a married man." A deed of trust was executed by the husband and wife on the ranch property. The balance of the purchase price was paid from the earnings of the garage business.

In 1951, Mr. Wolfe brought an action for declaratory relief against Mrs. Wolfe in which he sought a judgment to determine the Northridge property to be his separate property. That action was dismissed in 1952 by mutual consent.

The will of the deceased husband contained the following provisions: "THIRD: All property in which at this date I have an interest is my separate property, pursuant to the provisions of a certain property settlement agreement heretofore entered into between my said wife and me. It is my intention to dispose of all property over which I have the power of testamentary disposition." Paragraph FOURTH made specific bequests of ". . . my Cadillac automobile, jewelry, silver, books, pictures, paintings, works of art, household furniture and furnishings, clothing and other personal effects . . ." to Mrs. Wolfe. "FIFTH: I give and bequeath the sum of Two Thousand Dollars ($2,000) to ANGEL CORONA, in appreciation of his long and faithful service in my employ. It is my desire that my Executor and/or Trustee employ said ANGEL CORONA to manage my ranch property in Northridge, California, so long as it shall remain and be a part of my probate estate or the trust estate hereinafter described." Paragraph SIXTH provided: "I give, devise and bequeath all of the residue of my estate, real and personal, wherever situated, including all failed and lapsed gifts . . . in trust . . ." for the benefit of Leanore L. Wolfe, and Troi Wolfe, to terminate upon the death of the survivor, the remainder to be distributed to designated charities. The will further provided that the trustee distribute one-half of the net income of the trust to Leanore L. Wolfe, the whole of the net income to be paid to the survivor for her life. The trustee was empowered to invade the corpus of the trust if the income should be found insufficient to pay each beneficiary $3,600 per annum. Finally, the trustee was empowered to invade the corpus for the support, care, and comfort of the beneficiaries if the income is insufficient to so provide. Paragraph SEVENTH provided: "During such time as my ranch property in Northridge, California, shall remain and be a part of my probate estate or the trust estate, I direct that my wife, TROI C. WOLFE, shall, during her life, have the right to the use and occupancy of the residence located on said ranch property . . ." and the necessary surrounding area as determined by the trustee.

The trial court found and concluded on sufficient evidence, that the property settlement agreement was abrogated upon the subsequent reconciliation of the parties and that all of

the property in which the decedent had an interest at the time of his death was the community property of the spouses.

If the will expressly requires the wife to make an election, no substantial problem is presented. (*Estate of Dunphy,* 147 Cal. 95 [81 P. 315].) The testator may, however, so frame his will as to present the problem whether an election is required. ▮ If the testator purported to dispose of both his and his spouse's share of the community property, and it appears that the intent of the testator will be thwarted by giving literal effect to the will while recognizing the community property rights of the surviving spouse, an election should be required. ▮ The purpose of the election is to adjust the distribution of the property under the will to conform to the express or implied intention of the testator. Thus, it becomes necessary to examine the will for an expression of that intention, and if it cannot be readily determined from the face of the will, or if the will is ambiguous, rules of construction must be invoked to assist in the determination of that intent.

▮ If the respondent be required to make an election, she may repudiate the will and claim her statutory share of the community property or she may reject her interest under the law and claim under the will. She cannot take under both. If no election be required, one-half of the property found by the trial court to be community property would belong to the surviving spouse (Prob. Code, § 201) and she would be entitled to the additional interests conferred upon her by the will. (*Estate of Rossi,* 169 Cal. 148 [146 P. 430]; *Estate of Prager,* 166 Cal. 450, 454 [137 P. 37]; *In re Gilmore,* 81 Cal. 240 [22 P. 655]; *Morrison* v. *Bowman,* 29 Cal. 337.)

▮ Where an interpretation is required, that construction which leads to the conclusion that the testator was disposing only of his interest in the community property will be adopted. (*Estate of Moore,* 62 Cal.App. 265, 271 [216 P. 981].) The last sentence of the third paragraph of the will recites ''It is my intention to dispose of all property over which I have the power of testamentary disposition.'' When read in the light of the constructional preference stated in the Moore case, this sentence supports the conclusion that the testator did not intend to dispose of any property over which he did not have the power of testamentary disposition.

▮ In settling the testamentary trust upon his sister and widow, the testator described the corpus of the trust in general terms. It was a gift of the residue of his estate and the property which composed the corpus was not designated.

Where the testator describes his property in general terms, that is, "all of my property," or "all of my estate," he will be presumed to have intended to dispose of only that interest which was subject to his power of testamentary disposition. (*Estate of Prager,* 166 Cal. 450 [137 P. 37] ; *In re Gilmore,* 81 Cal. 240 [22 P. 655] ; *Estate of Silvey,* 42 Cal. 210 ; *La Tourette* v. *La Tourette,* 15 Ariz. 200 [137 P. 426, Ann.Cas. 1915B 70] ; Pom.Eq.Jur. § 489 (3d ed.) p. 429.)

Although the testator's declaration that he intended to dispose of all of the property over which he had the power of testamentary disposition and his description of the estate in general terms support the trial court's construction, it becomes clear, from a reading of the will in its entirety, that an election is required.

█ The testator, in the third paragraph of the will, recited that the whole of the property in which he had an interest was his separate property. Obviously he believed that the property settlement agreement was still in force and that all of the property disposed of by the will, including the property conveyed in trust, was his separate property. This belief is supported by his references to the Northridge property as "my ranch property." Although the trial court was not bound to give effect to the testator's declarations that the property was his separate property, those declarations were entitled to consideration in determining the intended scheme of distribution.

In *Estate of Vogt,* 154 Cal. 508 [98 P. 265], the testator expressly provided that all of the property in his estate except property of the value of $8,000 was his separate property. The will contained numerous references to the property as "my property." The testator's wife was a beneficiary under the will. The testator sought to dispose of the whole of the property as his estate, and without regard to his wife's community interest. This court held that his will must be construed to have disposed of the property accordingly, while protecting the testator's wife's community property interest. An election was required in order to carry out the legal effect of the terms of the will.

The respondent widow contends that the rules of construction enunciated in *La Tourette* v. *La Tourette, supra,* 15 Ariz. 200 apply here. In that case, the testator described the estate in general terms. The will did not show a mistaken belief as to the character of the property. The court correctly applied the rule that where the testator describes the estate in

general terms such as "all of the property of which I may die possessed," the will is deemed to dispose only of that part of the property in which the testator in fact had an interest at the time of his death and no election should be required. The Arizona Supreme Court distinguished *Estate of Vogt, supra,* 154 Cal. 508, by reference to language in the Vogt will in which the testator declared that his estate consisted in part of separate property.

The language of the will in the present case, considered in the light of the cases construing similar provisions, would indicate that the trial court should have required Mrs. Wolfe to make an election. (*Estate of Vogt, supra,* 154 Cal. 508; *In re Stewart,* 74 Cal. 98 [15 P. 445]; *Morrison* v. *Bowman, supra,* 29 Cal. 337; and see *Estate of Moore, supra,* 62 Cal. App. 265.)

An intention on the part of the testator to dispose of his wife's interest in the community property will not be implied where another construction is permissible. The third paragraph of the will purported to dispose of his own and his wife's share of the community property as his separate property and, after small bequests to his wife and Angel Corona, to divide the residue equally between his sister and his wife. Under the circumstances, the assertion by the wife of her rights under the will and at the same time of her interest in the community property under Probate Code, section 201, are inconsistent. A required election is clearly indicated.

The judgment is reversed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

McComb, J., dissented.

Respondent's petition for a rehearing was denied June 19, 1957. McComb, J., was of the opinion that the petition should be granted.