[Civ. No. 21780.   First Dist., Div. Two.   Sept. 21, 1964.]

Estate of FRANK ORWITZ, Deceased.   SAMUEL D. OR-
WITZ, as Executor, etc., Petitioner and Respondent, v.
BESS ORWITZ, Objector and Appellant.

768

Raymond L. Hanson, Daniel N. Loeb and Schofield, Hanson, Bridgett, Marcus & Jenkins for Objector and Appellant.

Pillsbury, Madison & Sutro, Thomas E. Haven, Paul G. Burri, Wexler & Wexler and Louis E. Wexler for Petitioner and Respondent.

AGEE, J.—Bess Orwitz, widow of Frank Orwitz, appeals from an order of the probate court, made in his estate proceedings, which determines certain issues contrary to her contentions.

Frank's holographic will* names his brother Samuel as executor and leaves the principal asset in the estate, which is an apartment building with storerooms on the ground floor, to Samuel in trust. The marital residence and the furniture therein are left to Bess. A general clause leaves the residue to Bess and Frank's brother Jack, in equal shares.

The commercial property was appraised at $90,000, the home and furniture at $26,350, and miscellaneous personal property at $13,733.98, making a total estate of $130,083.98.

---

*All provisions in the will which are referred to herein are set forth in full at the end of this opinion.

The rentals from the commercial property approximate $1,000 per month. It was originally owned by decedent and his first wife. After their divorce and his subsequent marriage to Bess, decedent purchased the former wife's half interest in his own name. The record does not disclose the source of the consideration paid for this half.

While Bess has never been a record owner of any interest in this property, we shall assume for the purpose of this appeal only that the half acquired after the second marriage is the community property of the decedent and Bess. (Civ. Code, § 164.) It is apparent from the will that the testator would not have agreed with this assumption.

*Issue*: Is the widow (Bess) *required to elect* whether she will take under the will or under the community property law? If an election is required, she cannot take under both. There is no express provision in the will relating to election.

In *Estate of Wolfe,* 48 Cal.2d 570, 574 [311 P.2d 476], the court stated: "The testator may, however, so frame his will as to present the problem whether an election is required. If the testator purported to dispose of both his and his spouse's share of the community property, and it appears that the intent of the testator will be thwarted by giving literal effect to the will while recognizing the community property rights of the surviving spouse, an election should be required. The purpose of the election is to adjust the distribution of the property under the will to conform to the express or implied intention of the testator. ... If the respondent [widow] be required to make an election, she may repudiate the will and claim her statutory share of the community property or she may reject her interest under the law and claim under the will. She cannot take under both. If no election be required, one-half of the property found by the trial court to be community property would belong to the surviving spouse (Prob. Code, § 201) and she would be entitled to the additional interests conferred upon her by the will. [Citations.]"

It is clear from the terms of the will before us that Frank intended to and purported to have the right to make disposition of the entire parcel of income property. He was an attorney at law and there is no contention that he did not know when he made his will that he had no legal right, without obtaining her consent, to dispose of any community property share which his wife might have therein.

The will discloses a comprehensive plan for the distribution

of the entire estate. The widow was to receive the residence and furniture outright. The remaining personal property was left to her and Jack outright. Only the income property was placed in trust.

In disposing of the income property the testator always referred to it (paragraphs Fourth, Ninth and Thirteenth) as "my" property, whereas, in devising the residence he described it as "our" property.

It would be entirely unreasonable to hold that the testator's intent was to set aside only three-fourths of the income property in trust. It is clear that, when he provided in paragraphs Fourth and Fifth that "One-half of the net income thereof to be paid to my wife Bess Orwitz" and "The other one-half of the net income thereof to be paid to my brother, Jack Orwitz," the intention was to dispose of the *entire* income from the property and not just three-fourths thereof.

The testator certainly did not intend that an undivided one-fourth interest in said realty should vest in his wife, free of the trust. Such an interest would carry with it the right to bring an action in partition and thus thwart the testator's intention to keep the property intact. It is consistent with such intention that he left the commercial property in its *entirety* to his brother Samuel, as trustee.

It is apparent from the will that the testator considered himself to be the *sole* owner of this property and believed that he had the right to require that it be kept intact. This is implicit in his directive in paragraph Fourth "not to sell my property better designated No. 135 West Portal Avenue, San Francisco, California, but to *retain same in my Estate* . . ." (italics added). Again, in paragraph Thirteenth, the testator directs that the trustee "shall not sell my said property #135 West Portal Avenue" unless it "shall depreciate in value and pay a net less than return of 6% on its marketable value or in the event its marketable value is in danger of great depreciation, . . ." It is significant that decedent said "my" property, not "my share" of the property.

It is not reasonable to conclude that the testator thought that his wife would assert any community interest in this property. Whether she has such an interest in fact is not an issue to be determined herein.

In *Estate of Emerson,* 82 Cal.App.2d 510, 514 [186 P.2d 734], the court stated: "It is of no concern that he was mistaken in his belief that the wife had no community interest in the property devised. His manifest intention to devise the estate as an entirety, and irrespective of any right which

might be asserted on behalf of the marital community, is the controlling factor. 'It is the testator's *intention*, and not the ground upon which that intention rests, that must control in the interpretation of his will. A mistaken belief on the part of a testator that he has the unrestricted power to dispose of the property absolutely is immaterial.' (*Estate of Moore*, 62 Cal.App. 265, 274 [216 P. 981].) The testator's intention that the estate in its entirety, and not merely his community interest therein, should be disposed of by his will was sufficient to put his widow to her election.''

We conclude, as did the court below and as stated in *Estate of Wolfe, supra,* as follows: ''Under the circumstances, the assertion by the wife of her rights under the will and at the same time of her interest in the community property under Probate Code, section 201, are inconsistent. A required election is clearly indicated.'' (P. 576 of 48 Cal.2d.) The language of the will under consideration herein is not reasonably susceptible of any other conclusion.

*Issue:* When does the trust terminate? Section 871 of the Civil Code provides that ''When the purpose for which an express trust was created ceases, the estate of the trustee also ceases.'' Section 2279 of the Civil Code provides that ''A trust is extinguished by the entire fulfillment of its object, . . .''

The testator's purpose in creating the trust was to provide Bess and Jack each with one-half of the net income from the commercial property during the period of their respective lifetimes. Upon the death of the survivor, this purpose will cease and the object of the trust will have been fulfilled. By making his sister Rebecca a beneficiary contingent upon her surviving either Bess or Jack (see paragraph Seventh), the testator did not evidence any intention to add Rebecca's lifetime as a factor in fixing the period of the trust.

This question could have arisen only if either Bess or Jack had predeceased the *testator.* Paragraph Sixth provides that, in such event, Rebecca was to replace the one so dying. However, this event did not occur and therefore paragraph Sixth did not become operable.

Paragraph Seventh provides: ''Above payments [to Bess and Jack] to be paid to each during each of their respective lives and for as long as each lives, monthly on the first of each and every succeeding month thereof; and in the event of the death of either to my sister, Rebecca Weigel.''

The term of the trust is, of course, the period during which monthly payments of trust income are to be made by the trustee. It is clear that these payments are not terminated by the death of Bess or Jack alone. The payments to the one who survives the other are to continue until the death of such survivor.

However, it is also clear that the testator did not intend that payments should continue *beyond* the death of the survivor of Bess and Jack. The payments are to be made ''for as long as each lives.'' The word ''each'' obviously refers only to Bess and Jack. The duration of Rebecca's life has no bearing upon the term of the trust.

Rebecca's bequest is contingent upon either Bess or Jack predeceasing her. In such event, Rebecca would thereupon be paid one-half of the trust income and the survivor of Bess and Jack would continue to be paid the other one-half for the remainder of the trust term.

The fact that the testator did not intend that the trust payments should extend beyond the life of the survivor of Bess and Jack is further evidenced by paragraph Thirteenth.

There the testator provided that if the trust realty should be sold, the proceeds were to be invested and the ''income thereof to be paid out as above indicated to my dear beloved wife and brother Jack Orwitz.''

While the words ''as above indicated'' can be construed to include Rebecca by such reference, it is more reasonable to infer that this is another indication that the testator intended to create the trust primarily for the benefit of Bess and Jack and that when both were gone the object of the trust would have been entirely fulfilled (Civ. Code, § 2279).

We have concluded that the trust terminates upon the death of the survivor of Bess and Jack and that paragraph 5 of the order appealed from should be amended accordingly.

Subdivision *a* thereof should be amended to read as follows: ''The trust shall terminate upon the death of the survivor of Bess Orwitz and Jack Orwitz.''

Subdivision *d* should be amended to read as follows: ''If Bess Orwitz predeceases Jack Orwitz, the net income of the trust property shall be paid to Jack Orwitz and Rebecca Weigel in equal shares, during the life of Jack Orwitz.''

Subdivision *e* should be amended to read the same as subdivision d except that the names of Bess and Jack should be interchanged.

Subdivision *f* should be deleted, since it contemplates payments to Rebecca after both Bess and Jack have died.

Subdivision *g* contemplates the death of Rebecca followed by the death of either Bess or Jack. In this situation the survivor of Bess and Jack would continue to be entitled to one-half of the trust income for the remainder of his or her life. The other one-half of the trust income would be paid out of the trust into the estate of Frank Orwitz. It would then be subject to distribution in Frank's estate under the provisions of the residuary clause in his will, paragraph Eleventh. (*Estate of Kruce,* 10 Cal.App.2d 426 [51 P.2d 1174].)

Hence, subdivision g should be amended to accord with these views. In its present form it provides that the "other one-half," as we have referred to it in our discussion above, should go to the heirs of whoever, as between Bess and Jack, dies first.

This result would be incorrect because the respective interests of Bess and Jack in the trust income as such are limited to that received by the trust realty during their respective lives. Jack's interest in the trust income as such is terminated by his death, as is that of Bess upon her death.

■ *Issue:* Is the trial court's order holding that a certain oil and gas lease is not an asset of the estate supported by substantial evidence? This was among the issues submitted by stipulation to a referee for hearing and his finding with respect thereto was approved and adopted by the court.

The lease was held in the name of decedent. The evidence establishes that decedent had obtained it as well as other oil and gas leases in his own name on behalf of his brother Samuel. Letters written by the decedent show that he was merely acting for his brother in obtaining these leases, that they were paid for by his brother, that decedent and his brother were casual in their business dealings with one another and never got around to transferring title to the leases, that Samuel paid all of the expenses of the trips made by decedent to obtain the leases and that Samuel paid the annual rentals on the leases.

We hold that the finding with respect to the lease is supported by substantial evidence.

The order appealed from is affirmed as modified. Each party is to bear his or her own costs on appeal.

Shoemaker, P. J., and Taylor, J., concurred.

Provisions of will.

"Fourth: I hereby direct my executor or trustee hereinafter named not to sell my property better designated No. 135 West Portal Avenue, San Francisco, California, but to retain same in my Estate to be disposed of as follows, to-wit: One-half of the net income thereof to be paid to my wife Bess Orwitz.

"Fifth: The other one-half of the net income thereof to be paid to my brother, Jack Orwitz.

"Sixth: Should either pre-decease me his or Ler share shall be paid to my sister, Rebecca Weigel.

"Seventh: Above payments to be paid to each during each of their respective lives and for as long as each lives, monthly on the first of each and every succeeding month thereof; and in the event of the death of either to my sister, Rebecca Weigel.

"Eighth: I hereby give, bequeath and devise to my dear beloved wife, Bess Orwitz, that certain parcel of real estate which is our residence, better designated as No. 15 Almaden Court, together with all furniture and furnishings thereof, located in San Francisco, California.

"Ninth: I hereby appoint my brother, Dr. Samuel D. Orwitz, as my executor and Trustee herein, and bequeath and devise my said property No. 135 West Portal Ave., San Francisco to him my Trustee for the uses and purposes of the manner of distribution outlined above, without bonds or necessity to seek approval of any probate judge or Court Decree of any Probate Court to carry out any of the purposes by this Will and Testament of mine."

"Eleventh: All the rest and residue of my estate, I give and devise to in equal shares, share and share alike to my dear beloved wife and my brother Jack Orwitz and in event either predecease me to my sister Rebecca Weigel, and in event she predecease me to my brother Dr. Samuel D. Orwitz."

"Thirteenth: My Executor or Trustee shall not sell my said property #135 West Portal Avenue only in the event, same shall depreciate in value and pay a net less than return of 6% on its marketable value or in the event its marketable value is in danger of great depreciation, and in such event of sale, its proceeds shall be invested in good marketable securities and which pay six percent (6%) annually in dividends and said income thereof to be paid out as above indicated to my dear beloved wife and brother Jack Orwitz."