[No. H025176. Sixth Dist. July 24, 2003.]

In re the Marriage of BRADLEY J. BEREZNAK and SUSAN E. HEMINGER.

BRADLEY J. BEREZNAK, Appellant, v.
SUSAN E. HEMINGER, Respondent.

**COUNSEL**

Bradley J. Bereznak, in pro. per. for Appellant.

Susan E. Heminger, in pro. per. for Respondent.

## Opinion

**ELIA, J.**—In this appeal Bradley Bereznak seeks review of family court orders denying his petition to vacate an arbitration award and granting respondent Susan Heminger's petition to confirm the award. Appellant's principal contention is that the parties' stipulation to submit child support issues to arbitration was void as against public policy. He further challenges the specific findings made by the trial court in ruling on the competing petitions. We agree with appellant that the parties' stipulation to engage in binding arbitration was void to the extent that it purported to deprive the court of jurisdiction to modify child support. We will reverse the order and direct the court to dismiss both parties' petitions.

### Background

In 1999, several years after the dissolution of the parties' marriage, respondent moved for modification of child support, a determination of support arrearages, and other relief. In January 2000 the court entered an order resolving these issues. In that order, by stipulation of the parties, the court stated that any future modification of child support would be submitted to Sherrol Cassedy for binding arbitration.

In March 2000 appellant contacted Sherrol Cassedy for the purpose of reducing his child support obligation. Ms. Cassedy served as a mediator on that occasion, and the parties stipulated to a reduction in support. In the course of the mediation in the summer of 2000, appellant learned that Ms. Cassedy was married to Dr. Matt Sullivan, who had acted as a special master for the parties in a 1993–1994 dispute.

In January 2001 appellant contacted Ms. Cassedy to request a further reduction of child support. The matter proceeded to arbitration, which resulted in an award of arrearages to respondent and a determination of child support based on appellant's earning capacity. One week later, on April 5, 2002, appellant wrote a letter to Ms. Cassedy asking her to "immediately reconsider" and modify her decision. Appellant protested that the January 2000 order did not allow for imputation of income, and that the arbitration decision reflected erroneous factual assumptions regarding his ability to pay support. Ms. Cassedy replied by letter 10 days later, stating that she had "considered his claims" and that "[t]he Arbitrator's Decision stands as submitted to the court."[1]

---

[1] While waiting to receive her response, appellant asked Ms. Cassedy again to serve as arbitrator based on a change in his income. She agreed but stated her belief that any modification would require a change of circumstances. Thus, contrary to the assertion in appellant's reply brief, respondent appears to have correctly stated that appellant contacted Ms. Cassedy three times to obtain a reduction in child support.

On April 22, 2002, respondent filed a petition to confirm the arbitration award. Appellant opposed the petition on July 22, 2002. On the same day he filed a "Petition to Vacate and or Correct" the award, citing the following grounds: "(1) The arbitrator failed to disclose grounds for her disqualification; (2) The arbitrator exceeded her powers; and (3) My rights were substantially prejudiced by misconduct of the arbitrator. Alternatively, I request that the court correct the award on the grounds that there was evident miscalculation of figures referred to in the award."

On September 9, 2002, the trial court granted respondent's petition to confirm the award. However, because appellant's petition to vacate was pending, the court stayed this ruling pending the hearing on appellant's petition. That hearing took place on August 28, 2002. On September 20, 2002, the court filed an order denying appellant's petition to set aside the award, finding his request to be untimely. The court further rejected appellant's argument that stipulations to arbitrate child support issues are void as against public policy.[2] The court also ruled against appellant on the issue of the arbitrator's disqualification, finding that appellant had waived this challenge and that there were no grounds for disqualification in any event.

DISCUSSION

1. *Appealability of the September 2002 Orders*

As a preliminary matter we must address respondent's argument that appellant has appealed prematurely from a proposed statement of decision. Although we reach a different conclusion, we do not agree with appellant that respondent's contention is "entirely frivolous and sanctionable."

Appellant filed a notice of appeal on October 15, 2002, from the September 9 and September 20, 2002 orders. He relies on Code of Civil Procedure section 1294, subdivision (d) as the basis for the appeal.[3] That provision, however, permits appeal from a "judgment entered pursuant to this title."

---

[2] This issue was discussed at the August 28, 2002 hearing and appears to have been raised at some earlier point. The appellate record, however, does not contain any prior written argument regarding voidness.

[3] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

Neither of the September 2002 orders was denominated a judgment.[4] The first was an order after hearing in which respondent's petition to confirm the arbitration award was granted but *stayed* pending the hearing on appellant's petition to vacate or correct the arbitration award. The September 9 order thus never went into effect, as it contemplated further proceedings. Thereafter the court issued its second order, on September 20, 2002, in which it denied appellant's petition to set aside the arbitration award and unconditionally granted respondent's petition to confirm the award.

The September 20, 2002 order bore the title of "Order after Hearing Re: Arbitration Award." Although appellant treated this order as a proposed statement of decision when he filed his objections to it, he apparently decided it was an order after all when he filed his notice of appeal. Although it is not one of the specific orders made appealable by section 1294, as appellant contends, we will nonetheless treat it as a judgment and address the central issue he presents. We will not, however, consider any rulings or other events occurring after the filing of the September 20, 2002 order.

## 2. *Timeliness of the Petitions*

Appellant contends that the court erred when it found that respondent's petition to confirm the arbitration award was timely and his request to vacate was untimely. For purposes of this section only, we will assume that sections 1285 et seq. governed the timing of the proceedings that followed the arbitrator's award. Neither the facts nor those statutory provisions support appellant's position.

Respondent submitted her petition on April 22, 2002, 19 days after the arbitrator's decision was filed and 25 days after the decision was served on the parties. The petition complied with section 1288.4, which precludes filing until at least 10 days after service of the signed copy of the award. Appellant's "Petition to Vacate and or Correct an Arbitration Award" was filed July 22, 2002, long past the response deadline prescribed by section 1290.6.[5] The petition also exceeded the 100-day period allowed by sections 1288 and 1288.2.[6]

---

[4] Section 577 defines a judgment as "the final determination of the rights of the parties in an action or proceeding." " '[W]hile there may be numerous orders made throughout a proceeding, there is only one judgment.' " (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 197 [23 Cal.Rptr.2d 482], quoting *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1605 [275 Cal.Rptr. 887].)

[5] This section allows 10 days to serve and file a response to a petition to confirm an arbitration award, or 30 days if the petition is served by mail.

[6] Section 1288 requires a petition to vacate or correct an award to be "served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." Section 1288.2 imposes the same time limit on a "response requesting that an award be vacated or that an award be corrected."

Appellant's assertion of error rests on the assumption that his April 5, 2002 letter to the arbitrator constituted an application for correction of the award under section 1284. Because that application was pending, he argues, section 1288.6 prohibited the filing of any petition to confirm the award.[7] The trial court, however, found that appellant's letter to Ms. Cassedy was not an application for correction. This ruling was primarily factual in nature. The court observed that appellant, a lawyer, had not asked the arbitrator for a correction, nor did he cite section 1284; he asked for an immediate "reconsideration and modification." The court reasoned that a strict construction of the statutory correction provisions was justified, since appellant himself had requested a narrow reading of the code as applied to respondent.

The court's ruling was well within its authority. That appellant was seeking reconsideration, not correction, is supported by his explicit request for "reconsideration and modification" and his failure even to mention either correction or section 1284. Moreover, in the letter he called for a redetermination of the merits, a task that would have exceeded the arbitrator's authority under sections 1284 and 1286.6.[8] The informal response received from the arbitrator indicates that she too did not perceive appellant's letter to be a formal application for correction.[9] In interpreting appellant's letter the court did not impose any "extraneous requirements" not contained in the Code of Civil Procedure; it merely determined as a matter of fact that appellant had submitted a request for reconsideration, primarily of the merits, not an application for correction. The court did not err in finding appellant's petition to be untimely.

### 3. *Voidness of Arbitration Agreement*

The parties' stipulation to submit future child support issues to binding arbitration was reflected in the court's January 2000 order. Appellant contacted the arbitrator three times after that for the purpose of reducing his child

---

[7] Section 1288.6 states: "If an application is made to the arbitrators for correction of the award, a petition may not be served and filed under this chapter until the determination of that application."

[8] Section 1284 permits correction upon any of the grounds set forth in section 1286.6, subdivisions (a) and (c). Subdivision (a) of the latter statute allows correction if there was "an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award." Subdivision (c) allows correction if the award "is imperfect in a matter of form, not affecting the merits of the controversy."

[9] The letter from the arbitrator, dated April 15, 2002, stated: "Dear Brad, Susan and Counsel: [¶] Enclosed please find the endorsed-filed copy of the Arbitrator's Decision Re Child Support and Medical Reimbursements. I have reviewed the letter from Brad dated April 5, 2002 and considered his claims set forth therein. The Arbitrator's Decision stands as submitted to the court."

support obligation. The first contact, in March 2000, resulted in mediation conducted by Ms. Cassedy; the second, in the fall of 2001, led to the arbitration at issue in this appeal. Only during the proceedings on appellant's petition to vacate or correct the award did he first contest the validity of the arbitration agreement. Appellant then asserted that the January 2000 stipulation was contrary to public policy and therefore void.

The trial court rejected this argument, citing decisions from other jurisdictions that had upheld agreements to subject support issues to binding arbitration. The court noted that the parties had not agreed to limit child support or otherwise to provide inadequate protection for their children. The court also stated that it was retaining jurisdiction to review the arbitration award.

The court further observed that appellant "was an attorney who understood the benefits and disadvantages of arbitration. He believed there was *no* judicial review when he agreed to arbitration. This is what he wanted." In the trial court's view, appellant was "attempting to 'get two bites at the apple.' And he is doing so after two years of accepting the services of Ms. Cassedy, up until the time he came upon a result he did not like." The court compared this case to the circumstances presented in *Reynolds v. Whitman* (1996) 40 Mass.App.Ct. 315 [663 N.E.2d 867], where a Massachusetts appellate court upheld a marital agreement to arbitrate support. As in *Reynolds*, both parties here were represented by competent and experienced counsel. In the trial court's view appellant, like the husband in *Reynolds*, "now dissatisfied with the arbitrator's decision, is hardly in a position to complain that the agreement runs counter to public policy."

Appellant challenges the trial court's ruling, arguing that the stipulation was void as against public policy because it "clearly divested the court of jurisdiction to modify child support" and compromised the children's right to support. According to appellant, the court's express retention of jurisdiction to review the award was itself unauthorized, because arbitration decisions are not subject to judicial review.

We agree in part with appellant's argument. We reject appellant's attempt to select only those features of the arbitration proceedings that he believes are incorrect or unauthorized while at the same time suggesting that the entire award was nonreviewable by the family court. This point is of no consequence, however, as we agree with appellant that the parties' attempt to bind the court to future decisions made by the arbitrator was legally ineffective.

 It is true that parties may settle their disputes over child support by agreement. This state has a "strong policy favoring settlement of litigation"

over family law disputes. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 910 [30 Cal.Rptr.2d 265, 872 P.2d 1190].) Nor was there anything unlawful about the parties' mutual decision to allow a third party to help them settle future disputes. But such agreements, to the extent that they purport to restrict the court's jurisdiction over child support, are void as against public policy. (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1341 [66 Cal.Rptr.2d 393]; accord, *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 469 [75 Cal.Rptr.2d 263]; *In re Marriage of Armato* (2001) 88 Cal.App.4th 1030 [106 Cal.Rptr.2d 395].) Children have the "right to have the court hear and determine all matters [that] concern their welfare and they cannot be deprived of this right by any agreement of their parents." (*In re Marriage of Lambe & Meehan* (1995) 37 Cal.App.4th 388, 393 [44 Cal.Rptr.2d 641].) Thus, these agreements are not binding on the children or the court, and the court retains jurisdiction to set child support irrespective of the parents' agreement.

Here the court and the parties agreed in November 1999 that future support issues would be resolved by *binding* arbitration. In approving that agreement the court stated that it was reserving jurisdiction only to appoint a different arbitrator should Ms. Cassedy be unable or unwilling to serve. The parties obviously intended and assumed that the results of the arbitration would be nonreviewable by the court.

Although the court stated in its September 20, 2002 order that it retained jurisdiction to review any arbitration awards (notwithstanding its previous limited reservation of jurisdiction and the parties' assumptions), it did not undertake that review, apparently because it had not been asked to do so. Instead, the court was asked to rule on legal and equitable grounds and *not* to consider the merits of the underlying dispute over income and earning capacity.[10] Indeed, the central premise of appellant's challenge to respondent's petition was that the stipulation to arbitrate was void *because* courts lacked authority to review arbitration awards. Appellant insisted that the arbitrator's decision was "beyond [the] court's review for all practical purposes. The law cannot be considered. The sufficiency of the evidence

---

[10] Appellant had initially asked the court to review the arbitrator's decision on the merits, but according to his statement to the court, "[w]hen I saw that this court could not review it based on the arbitration statutes and the case laws [*sic*], none of which deals with family proceedings, but contractual arbitration of businesses, I realized that this was wrong. And I discovered the cases that hold such agreements between the parties … to be void as against public policy. And that is the case in this court, Your Honor."

cannot be considered."[11] Thus, appellant maintained that the court had very limited power and should overturn the arbitration decision based on equity alone.

■ To the extent that the parties' agreement purported to bind the court and the children to future arbitration decisions, it was of no legal effect. The arbitration agreement is not wholly void, as the parties did not agree to deprive their children of support or in any way to compromise their parental support obligations. ■ Both parties reasonably sought a means of resolving future disputes in a cost-effective and efficient manner, which entailed the use of a certified family law specialist who was, according to the court, "among those highest qualified in the State of California." However, the parties could not obtain what either of them requested, *either* confirmation or vacation under section 1285 et seq. because of the limited review those provisions permit. Appellant, as the party dissatisfied with the arbitrator's decision, could have asked the court to exercise its continuing jurisdiction by seeking independent review of the merits of the award. He did not do so; on the contrary, he vigorously argued that independent review would be unauthorized.

Because the court was asked to rule in accordance with inapplicable statutory provisions without addressing the underlying support controversy, both petitions should have been dismissed. Appellant's remaining contentions regarding the arbitrator's authority to impute income and her alleged conflict of interest are moot.

---

[11] These statements at the August 28, 2002 hearing belie appellant's representations to this court at oral argument. Both parties were representing themselves, but appellant is a lawyer and respondent is not. During argument appellant stated that Judge Bernal had refused to decide the merits of the support dispute and instead had "treated [the arbitration award] as if it were under the CCP, under the arbitration statutes. And [Judge Bernal] said, '*I cannot review the evidence on the merits* ...' he treated it as if it were arbitration and he *could not review it.*" Appellant also told this court, "I initially asked the court to look at this [arbitration decision] and look at the evidence on the merits, whether or not there was substantial evidence in this case to support it. And my opponent said, 'You can't do that ... arbitration is nonreviewable on the merits.' And Judge Bernal agreed. And he said, 'I will *summarily* affirm—confirm—the arbitration award and child support *is set according to what Ms. Cassedy ordered,' without reviewing ... any evidence.*" These statements completely misstate the appellate record. As noted earlier, it was appellant himself who insisted that because this was an arbitration, the court was not authorized to review the merits, but could only proceed in accordance with the arbitration statutes, a limitation that rendered the entire agreement void.

Appellant again misrepresented the record when he was asked whether he had filed a motion to modify support in superior court. He answered, "Yes, I did, Your Honor ... I filed it in April 2002." The record before us contains no motion to modify support between the January 2000 order and the September 2002 order reviewed in this appeal. In April 2002 he wrote a letter to *the arbitrator* asking her to reconsider her decision.

In misstating the record, appellant has not only taken advantage of respondent's lack of experience and knowledge, but misled this court on important procedural facts. In lieu of sanctions, we will order appellant to pay the costs of this appeal in the interests of justice.

## DISPOSITION

The September 20, 2002 order is reversed. The trial court is directed to enter a new order dismissing both petitions. In the interests of justice, appellant shall pay the costs of this appeal.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied August 5, 2003.