[No. B185956. Second Dist., Div. One. May 25, 2007.]

JACQUELINE S. COLBURN et al., Plaintiffs and Appellants, v.
THE NORTHERN TRUST COMPANY, as Trustee, etc., et al., Defendants
and Appellants.

440

COUNSEL

Law Offices of Paul F. Cohen, Paul F. Cohen, Liza Amtmanis; Law Offices of Gordon B. Cutler and Gordon B. Cutler for Plaintiff and Appellant Jacqueline S. Colburn.

Mitchell Silberberg & Knupp, Allan B. Cutrow and Karl de Costa for Plaintiff and Appellant Barbara D. Bergstein.

Loeb & Loeb, Stuart P. Tobisman, David C. Nelson and Alyse N. Pelavin for Defendants and Appellants.

OPINION

VOGEL, J.—By a carefully drafted no contest clause in his trust, Richard D. Colburn's testamentary plan compelled a forced election by his former wife and their children—either enforce their rights under an existing marital dissolution judgment by filing creditor's claims, or relinquish those rights and take the gifts provided for them in his trust instruments. The former wife and children filed "safe harbor" petitions (Prob. Code, § 21320) in pursuit of an order eliminating the election and allowing them to reap the benefits of both the marital dissolution judgment and the gifts under the trust. The trustees opposed both petitions. The trial court found that creditor's claims (a prerequisite to enforcement of the marital judgment) would violate the no contest clause, but that an order to show cause for modification of the child support due under the marital judgment would not. Both sides appeal, the former wife and children in search of an order that would allow them to have their cake and eat it too, the trustees in search of consistency. We agree with the trial court that creditor's claims would violate the no contest clause but disagree with the trial court's finding that an order to show cause would not. We affirm the order denying the safe harbor petitions and reverse the finding that allows an order to show cause.

## FACTS

Richard D. Colburn married Jacqueline S. Colburn in May 1998. They had two children, Daisy (born in 1998) and Franklin (born in 2000), then divorced in January 2002.

## The Dissolution Judgment

A final judgment based on a stipulated marital settlement agreement obligated Richard (and, in the event of his death, his estate) to pay child support (tax free to Jacqueline) of $4,000 per month per child until majority, marriage, emancipation, or death (¶ 2.1), to provide medical and dental care for the children (¶ 2.4), and to pay monthly spousal support of $8,333 to Jacqueline until her death, nonmodifiable and not terminable on her remarriage or his death (¶ 1.1).[1] In addition, the marital judgment obligated Richard to deposit into a separate irrevocable trust the amount of $950,000 for the children (¶ 3.2), and to include in his estate plan an irrevocable trust or annuity sufficient to make annual tax-free payments of $100,000 to Jacqueline until her death, with any remainder passing to the Colburn Foundation, a charitable trust.

## The Richard D. Colburn Trust

Richard created the Richard D. Colburn Trust in 1969, and amended and restated it in November 2002 (after the dissolution of his marriage to Jacqueline). The trust includes various provisions designed to comply "with and . . . carry out the obligations imposed upon [Richard] and [his] estate by the [marital] judgment."

### A.

With regard to child support for Daisy and Franklin (and to carry out the provisions of ¶¶ 2.1 and 2.4 of the marital judgment), the trust instructs the trustees to "purchase a high quality commercial annuity . . . in an amount sufficient to make monthly payments to [Jacqueline] equal to $4,000 per child commencing with the month of [Richard's] death . . . until each child attains age 19, plus such additional amounts [if any] needed to pay [Jacqueline's] income tax liability arising from the Child Support Payments." A separate provision directs the trustees to make a "good faith, reasonable estimate" of the children's medical costs and to establish a medical trust in an amount not to exceed $1 million in order to "carry out the obligations imposed upon [Richard's] estate" by the marital judgment.

In addition to and independent of Richard's obligations under the marital judgment, the trust creates separate $3 million trusts for Daisy and Franklin.

---

[1] The marital judgment also obligated Richard to make a lump sum payment of $750,000 to Jacqueline to equalize the property division, and another lump sum payment of $750,000 to her as child support earmarked for the purchase of a residence for Jacqueline and the children. If Jacqueline subsequently sought increased child support, the payment for the residence was to be deemed an advance against any additional award of child support.

"[I]n full satisfaction of the obligations [to Jacqueline] imposed upon [Richard's] estate" by paragraphs 1.1 and 5.2 of the marital judgment, the trust provides for the creation of an irrevocable "charitable remainder annuity trust" to make monthly spousal support payments to Jacqueline of $8,333 ($100,000 per year) commencing the first day· of the month following Richard's death and terminating upon Jacqueline's death, with the remainder passing to the Colburn Foundation, and in addition provides for the purchase of a "high quality commercial annuity" to pay Jacqueline $100,000 annually for life, plus an amount necessary to pay her tax liability for those payments.[2]

## B.

The trust includes this no contest clause:·

"1. I have intentionally and with full knowledge omitted to provide for my heirs, except for such provisions, if any, as are made specifically in this trust and my Will. If any person, who is or claims under or through a beneficiary of this trust, in any manner whatsoever, directly or indirectly, contests or attacks this trust or my Will, takes any action that would frustrate the dispositive plan contemplated in this trust or my Will, conspires or cooperates with anyone attempting to contest, attack, or frustrate this trust or my Will, or takes any of the actions set forth in items (a) through (d) below of this paragraph . . . , then in that event I specifically disinherit each such Objector. In that event, any portion of the trust estate not disposed of under the foregoing provisions of this trust shall be distributed to the Colburn Foundation. For purposes of this Part, the following actions shall constitute a contest: (a) filing a creditor's claim or prosecution of an action based thereon, (b) commencing any legal action or proceeding to determine the character of property, (c) challenging the validity of any instrument, contract, agreement, beneficiary designation, or other document executed by me and pertaining to the disposition of my assets (including the beneficiary designation of any annuity, insurance policy, retirement plan, or buy-sell agreement), and (d) petitioning for settlement or for compromise affecting the terms of this trust or my Will, or for interpretation of this trust or my Will. Notwithstanding the foregoing but subject to paragraph 2 below, this paragraph 1 shall not apply to any person solely by reason of such person taking an action described in items (a) through (d) above, if such action is unopposed by the Trustee . . . .

---

[2] As noted above, the marital judgment obligated Richard to fund an irrevocable trust for the children ($950,000). There is no such provision in the trust (although as noted the trust gives each of the children $3 million in trust), and the parties seem to agree that Richard separately created the $950,000 trust. There is nothing in the trust about the $750,000 payment for the children's residence or the $750,000 payment to Jacqueline to equalize the property division, apparently because Richard believed those payments had been made. Jacqueline and the children believe otherwise.

"2. On January 30, 2002, a judgment of dissolution of marriage was entered . . . dissolving my marriage to [Jacqueline] . . . . I have set forth provisions above in this instrument to fulfill all obligations I may have to [Jacqueline], Daisy, and Franklin pursuant to the terms of the [dissolution judgment]. I specifically intend that if [Jacqueline] (or any personal representative or agent of [Jacqueline]) (a) raises any claim that she has a community property interest in any asset of this trust or my estate, (b) files a creditor's claim in my estate or against this trust or prosecutes any action based thereon, or (c) in any other manner makes any claim against this trust, my estate, the Colburn Music Fund, the Colburn Foundation, then, in that event, [Jacqueline] and all of her descendants (including Daisy and Franklin) shall be deemed to be Objectors as provided in paragraph 1 above, and for all purposes hereof, they each shall be deemed to have predeceased me. . . .

"3. If [Jacqueline], either on her own behalf or in any other manner [or through any other person] commences . . . any legal proceeding of any form and/or nature against me and/or [the individual trustees], my estate, this Trust or any other trust established by me during my lifetime, my personal representatives [or any of his charitable entities or family members], then I hereby provide that such action shall constitute a contest of this trust and my Will, and I hereby disinherit [Jacqueline] and all [of her] descendants . . . (including Daisy and Franklin). . . ."

The Northern Trust Company and three of Richard's six adult children (Richard W. Colburn, Keith W. Colburn, and Carol C. Hogel) were named as the trustees of Richard's trust.

### C.

Richard died on June 3, 2004, and the trustees thereafter initiated procedures to require anyone asserting a claim against the trust's assets (including claims based on money judgments) to first present a creditor's claim to the trustees. (Prob. Code, §§ 19000, subd. (a)(1), 19004, 19300, subd. (b); *Embree v. Embree* (2004) 125 Cal.App.4th 487, 493 [22 Cal.Rptr.3d 782].)[3]

In October, Jacqueline filed two safe harbor applications (one for herself, and one on behalf of the children which was subsequently prosecuted by Barbara D. Bergstein as the children's guardian ad litem) in which she asked the probate court to determine whether creditor's claims for spousal and child support and other funds she claimed pursuant to the marital judgment (a total of $8,551,890 for her and $4,687,000 for the children) or, in the children's case, an order to show cause for modification of child support as an

---

[3] All section references are to the Probate Code.

alternative to a creditor's claim ($4,687,000), would violate the trust's no contest clause. (§ 21320.)[4] In a nutshell, Jacqueline and the children claimed the provisions of Richard's trust did not fully satisfy the obligations imposed on his estate by the marital judgment, and that their proposed creditor's claims would carry out, not frustrate, his stated intention to have the trust fulfill his obligations under the marital judgment.

The trustees, joined by the Colburn Foundation, opposed both applications, noting that "the overall distributions to [Jacqueline] and the children under the trust far exceed the amounts required by the [marital judgment]" and contending, among other things, that the proposed creditor's claims would be contests under the express terms of the trust instrument because they sought "distributions from the trust estate that far exceed[ed] and differ[ed] from the distributions for [Jacqueline and the children] provided for under the trust" (and thus frustrated the purpose of the trust).

In July 2005, the probate court signed and filed an order finding (1) that Jacqueline's proposed creditor's claim, if filed, *would* violate the trust's no contest clause, (2) that the children's proposed creditor's claim, if filed, *would* violate the trust's no contest clause, but (3) that an application for an order to show cause for modification of child support, if filed, would *not* violate the no contest clause because the clause is "unenforceable as against public policy with respect to modification of child support."

Jacqueline and the guardian ad litem appeal from the order insofar as it finds that their proposed creditor's claims would violate the no contest clause, and the trustees appeal from the order to the extent it holds that an application for an order to show cause for modification of child support would not violate the no contest clause.

## DISCUSSION

### I. *Jacqueline's and the Children's Appeals*

Jacqueline and the children contend their proposed creditor's claims would not violate the no contest clause. We disagree.

---

[4] Under section 21320, "a beneficiary may, without violating a no contest clause, apply to the court for a determination whether a particular act would be a contest provided that no determination of the merits of the petition is required." (*McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 487 [33 Cal.Rptr.3d 689].)

## A.

▮ A no contest clause in a will or trust instrument creates a condition upon the instrument's gifts and disposition by conditioning a beneficiary's right to take the share provided to her upon her agreement to acquiesce to the terms of the instrument.[5] No contest clauses are not only valid but also favored as a matter of public policy—because they discourage litigation and give effect to the purposes expressed by the testator or trustor. "[E]ven though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [trust] in such a way as to immunize legal proceedings plainly intended to frustrate [the trustor's] unequivocally expressed intent from the reach of the no-contest clause.' " (*Burch v. George* (1994) 7 Cal.4th 246, 255 [27 Cal.Rptr.2d 165, 866 P.2d 92].)

▮ A no contest clause may result in a "forced election" where a beneficiary is obligated to choose between two inconsistent or alternative rights or claims because the testator or trustor clearly intended that the beneficiary not enjoy both. (*Estate of Webb* (1977) 76 Cal.App.3d 169, 173–174 [142 Cal.Rptr. 642].) Put another way, a claimant cannot at the same time take the benefits under a testamentary instrument and repudiate the losses; she must accept the terms in toto, or reject them in toto. (*Ibid.; Burch v. George, supra*, 7 Cal.4th at p. 257; *Estate of Orwitz* (1964) 229 Cal.App.2d 767, 769 [40 Cal.Rptr. 545].) A forced election may be expressed in the testamentary document (*Estate of Lufkin* (1901) 131 Cal. 291, 293 [63 P. 469]) or implied when the trustor's intent would be thwarted by giving effect to the trust's testamentary provisions *in addition to* rather than instead of the beneficiary's other rights under a statute or judgment. (*Estate of Orwitz, supra*, 229 Cal.App.2d at p. 769.) Where a beneficiary has rights independent of the testamentary document, a no contest clause necessarily creates a forced election. (*Burch v. George, supra*, 7 Cal.4th at p. 265.)

With these principles in mind, we independently determine Richard's intent from the trust instrument (no extrinsic evidence was presented in the trial court). (*Estate of Davies* (2005) 127 Cal.App.4th 1164, 1173 [26 Cal.Rptr.3d 239]; *Estate of Webb, supra*, 76 Cal.App.3d at p. 174; *Burch v. George, supra*, 7 Cal.4th at pp. 254–256; *McIndoe v. Olivos, supra*, 132 Cal.App.4th at p. 487.)

---

[5] A "contest" is any action, including the filing of a creditor's claim, "identified in a 'no contest clause' as a violation of the clause." (§ 21300, subd. (a); see *id.*, § 21305.) A "no contest clause" is a "provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court." (§ 21300, subd. (d); see *id.*, § 21303.)

## B.

Richard's no contest clause is a paradigm of clarity and unequivocally states his intent.

He provided that any beneficiary of his trust or will who, directly or indirectly, contested or attacked either document so as to "frustrate [his] dispositive plan"—by "filing a creditor's claim" or otherwise—would be specifically disinherited and her share would go to the Colburn Foundation.

He identified the marital dissolution judgment and stated that he had set forth in his trust provisions "to fulfill all obligations [he might] have to [Jacqueline], Daisy, and Franklin pursuant to the terms of the [marital judgment]." He explained that he "specifically intend[ed] that if [Jacqueline] (or any personal representative or agent of [Jacqueline]) (a) raise[d] any claim that she ha[d] a community property interest in [his] estate or against this trust or prosecut[ed] any action based thereon, (b) *fil[ed] a creditor's claim in [his] estate or against this trust* or prosecut[ed] any action based thereon, or (c) in any other manner [made] any claim against this trust, [his] estate, the Colburn Music Fund, or the Colburn Foundation, then in that event [Jacqueline] and all of her descendants (including Daisy and Franklin) shall be deemed to be Objectors as provided in [the no contest clause], and for all purposes thereof, they each shall be deemed to have predeceased [him]." (Italics added.)

Lest there be any doubt, he also provided that if Jacqueline, "either on her own behalf or in any other manner [or through any other person] commence[d] . . . any legal proceeding of any nature against [him] and/or [the trustees], [his] estate, this Trust, or any other trust established during [his] lifetime, [or any of his charitable entities], then . . . such action shall constitute a contest of this trust and [his] Will, and [he thereby] disinherit[ed] [Jacqueline] and all [of her] descendants . . . (including Daisy and Franklin)."

■ By its plain terms, the no contest clause bars the creditor's claims proposed by Jacqueline and the children.[6] By its substantive provisions, the trust itself confirms Richard's intent to have the trust perform all of his obligations under the marital judgment—while at the same time giving $3

---

[6] We reject out of hand the children's contention that a "reasonable interpretation of the no contest clause" would mean it barred the claim filed on their behalf by Jacqueline, but not the claim prosecuted by their guardian ad litem or anyone else acting on their behalf. By its plain language, the no contest clause applies to "any person" (all noncharitable beneficiaries) who is or "claims under or through a beneficiary" of the trust. (§§ 21120 [words of an instrument are to be interpreted to give every expression some effect], 21121; *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 13 [118 Cal.Rptr. 21, 529 P.2d 53].)

million gifts to each of his children. Quite plainly, he did everything within his power to ensure that Jacqueline and the children would accept his gifts without challenging his overall testamentary plan, while at the same time forcing their election so that their challenge to the trust, if made, would leave them to their remedies under the marital dissolution judgment.

## C.

To avoid this result, Jacqueline and the children offer a variety of arguments, none of which have merit.

### 1.

Jacqueline contends that, although it is clear Richard intended to satisfy the marital judgment by the provisions in his trust, those provisions do not accomplish his intended purpose. According to Jacqueline, her goal is to further Richard's intent by modifying the trust to conform to the judgment, which she insists is not a contest.[7] The children advance a similar argument, pointing to the differences vis-à-vis child support and medical support, and the absence of the $750,000 residence provision from the trust. Both arguments miss the point, because the mere filing of a creditor's claim is a contest within the plain language of the no contest clause, and the purported reasons for prosecuting the claims are irrelevant. (*Burch v. George, supra,* 7 Cal.4th at p. 257; *Estate of Orwitz, supra,* 229 Cal.App.2d at pp. 770–771; *Estate of Emerson* (1947) 82 Cal.App.2d 510, 514 [186 P.2d 734].)

### 2.

Richard's trust provides that, before making distributions to Jacqueline and the children "and in order to ensure that [his] estate is eligible for the maximum allowable federal estate tax charitable deduction," the trustees are "to obtain either an order from the court having jurisdiction over this trust or

---

[7] She conveniently ignores the fact that her proposed creditor's claim seeks a lump sum payment for spousal support based on her presumed life expectancy (not the monthly payments provided in the marital judgment to continue only so long as she actually lives), plus the $750,000 payment provided in the judgment (to equalize the property division), which is not included in the trust (apparently because Richard believed that payment had been made). In short, the amounts sought by her creditor's claim are for more and different benefits than those available to her under the marital judgment or the trust. Of course, the merits of Jacqueline's claim that the trust does not satisfy Richard's obligations under the marital judgments—that is, the merits of her proposed creditor's claim—cannot be considered on this appeal. (§ 21320, subd. (c) [a determination whether a proposed action violates a no contest provision may not be made if a determination of the merits of the beneficiary's proposed action is required]; *McIndoe v. Olivos, supra,* 132 Cal.App.4th at p. 487; *Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1136 [114 Cal.Rptr.2d 865].)

other suitable legal release" confirming that the trust satisfied his postdeath obligations under the marital judgment. In the event one or more of the provisions related to the marital judgment are determined by court order or legal release to fail to satisfy the marital judgment, those provisions are to be deemed void. According to Jacqueline and the children, the trustees have failed to obtain the required order or releases, and their creditor's claims are nothing more than an effort to obtain the determinations the trustees should have sought and obtained (while at the same time preserving Jacqueline's and the children's rights by the timely filing of their creditor's claims). We disagree.

First, there is nothing in the record to support an assumption that the trustees were required to act before the safe harbor petitions were filed, or that the time within which the trustees can seek the required order or release has expired. Jacqueline and the children could consent to an order confirming the sufficiency of the trust, confirming their rights under the trust, and abandoning their claims under the marital judgment. Alternatively, they could relinquish their rights under the trust, file their proposed creditor's claims, and obtain the benefits they are entitled to under the marital judgment. In either event, the onus is on Jacqueline and the children, not the trustees (whose obligation is not triggered until distribution is on the horizon).[8]

Second, assuming the trustees are in some way remiss in their duties, the trustees' omission cannot transform the creditor's claims into something other than that which they are—actions that, without regard to their purpose, are expressly within the scope of Richard's no contest clause.

### D.

Jacqueline and the children contend that, assuming their proposed creditor's claims trigger the no contest clause, public policy considerations (the enforcement of spousal and child support orders) bar enforcement of the no contest clause in this case. We disagree.

Enforcement of the no contest clause extinguishes Richard's testamentary gifts to Jacqueline and the children but it in no way prevents them from enforcing Richard's support obligations under the marital judgment. As our Supreme Court explained in *Burch v. George, supra,* 7 Cal.4th at pages

---

[8] As the trustees point out, the no contest clause does not bar an action by a beneficiary that is unopposed by the trustees. Accordingly, the children could have filed a creditor's claim contingent on an order or agreement voiding one or more of the trust's provisions and making it clear that then, and only then, would they attempt to enforce the concomitant provisions in the marital judgment.

261–267, where the decedent's widow advanced essentially the same argument, claiming that enforcement of a no contest clause impaired and effectively prohibited enforcement of her community property rights, "while the enforcement of a no contest clause might work a forfeiture of a surviving spouse's conditional right to take under the trust instrument, it does not . . . work any forfeiture or conversion of the spouse's community property." (*Id.* at p. 265.) The same is true about spousal and child support because here, as in *Burch,* the no contest clause does not deprive the former spouse or children of their right to support under the marital judgment, nor does it hinder their ability to assert those interests. To the extent Jacqueline and the children believe their claims under the marital judgment are payable by Richard's estate, they are free to pursue those claims at their option. (*Ibid.*)

■ That Jacqueline and the children would thereby relinquish their conditional right to take under Richard's trust is a given—because equity supports enforcement of the no contest clause against beneficiaries asserting support claims against the trust's assets when those claims would plainly frustrate the trustor's intent and expectations. "There is considerable unfairness in allowing a [former] spouse [and her children] to accept a will or trust instrument to the extent it confers a benefit, and at the same time attack the instrument to the extent it does not. Under such circumstances, the [former] spouse [and her children] would receive a windfall to the detriment of other beneficiaries." (*Burch v. George, supra,* 7 Cal.4th at p. 267; see *Estate of Wolfe* (1957) 48 Cal.2d 570 [311 P.2d 476]; *Estate of Waters* (1972) 24 Cal.App.3d 81 [100 Cal.Rptr. 775]; *Estate of Orwitz, supra,* 229 Cal.App.2d at pp. 769–771; *Estate of Lufkin, supra,* 131 Cal. 291; Heywood, *Proverbs* (1546) ["Would ye both eat your cake and have your cake?"].)[9]

■ We reject the children's challenge to the specific provision in the trust that a creditor's claim by Jacqueline would disinherit not only her but also the children (as Jacqueline's "descendants"). First, the issue was not raised in either of the safe harbor petitions and thus is not before us on this appeal. Second, the issue is premature and will ripen only if Jacqueline ultimately relinquishes her rights under the trust and pursues a creditor's claim but the children do the opposite by choosing the trust and relinquishing their rights under the marital judgment. (But see *Burch v. George, supra,* 7 Cal.4th at

---

[9] Conversely, there is nothing patently unfair about this compelled election. As we noted in *Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 565 [50 Cal.Rptr.3d 468], a testator has the right to grant bequests subject to any lawful conditions he may select, and it is not for us or any court to question the testator's selected approach. Unlike us, Richard knew Jacqueline and did everything required to compel her to choose between keeping the rights she had negotiated and obtained under the marital judgment or relinquishing those rights in order to gain some other benefit under his trust. It is also worth noting that, in addition to Jacqueline and her children, Richard had five adult children and one adult stepson from a prior marriage, and was contemplating a new marriage at the time of his 2002 amendment to his trust.

p. 256; *Zwirn v. Schweizer* (2005) 134 Cal.App.4th 1153 [36 Cal.Rptr.3d 527]; *Estate of Pittman* (1998) 63 Cal.App.4th 290 [73 Cal.Rptr.2d 622]; *Tunstall v. Wells, supra,* 144 Cal.App.4th at p. 558.) For this reason, and because the public policy issue could not be determined without factual findings about the benefits and burdens of the compelled election, the point is outside the scope of the safe harbor petitions. (Cf. *Estate of Ferber* (1998) 66 Cal.App.4th 244, 251 [77 Cal.Rptr.2d 774] [when a public policy issue is raised in a safe harbor petition, it may be considered only when it can be disposed of as a matter of law, without reference to factual matters].)[10]

## II. *The Trustees' Appeal*

The trustees contend the trial court erred in finding that an application for an order to show cause to modify child support would not violate the no contest clause. We agree.

■ As the children concede, a creditor's claim is a prerequisite to an application for an order to show cause to modify child support. (§§ 19004, 19300.) As explained above, a creditor's claim would violate the no contest clause. As necessarily follows, the children must choose between their rights under the marital judgment and those given by the trust. Any other result would be a windfall for the children, a disservice to the trust's other beneficiaries, and a blatant violation of Richard's testamentary plan. (*Burch v. George, supra,* 7 Cal.4th at p. 267; *Estate of Wolfe, supra,* 48 Cal.2d 570; *Estate of Waters, supra,* 24 Cal.App.3d 81; *Estate of Orwitz, supra,* 229 Cal.App.2d at pp. 769–771; *Estate of Lufkin, supra,* 131 Cal. 291.)

---

[10] To the extent there are other issues sprinkled throughout Jacqueline's and the children's briefs, we reject them for the reasons stated in the text. For example, the children's claim that Richard did not intend the no contest clause to apply to a claim brought on their behalf is belied by the express language of the no contest clause: "I have intentionally and with full knowledge omitted to provide for my heirs, except for such provisions, if any, as are made specifically in this trust and my Will. If any person who is or claims under or through a beneficiary of this trust in any manner whatsoever, directly or indirectly, contests or attacks this trust or my Will, takes any action that would frustrate the dispositive plan contemplated in this trust or my Will, conspires or cooperates with anyone attempting to contest, attack, or frustrate this trust or my Will, or takes any of the actions set forth in items (a) through (d) below of this paragraph . . . , then in that event I specifically disinherit each such Objector." By way of another example, the no contest clause does not, as the children contend, restrict the court's jurisdiction over child support. (*In re Marriage of Bereznak* (2003) 110 Cal.App.4th 1062, 1069 [2 Cal.Rptr.3d 351] [children have the right to have the court hear and determine all matters that concern their welfare].) The children, through their mother or their guardian ad litem, have the absolute right to relinquish their father's testamentary gifts and fully enforce his estate's obligations under the marital judgment if it is in their best interests to do so. If the trust's bequests to the children are more generous than the benefits they could obtain under the marital judgment, we presume Jacqueline or the guardian ad litem would choose the trust over the judgment. Either way, it does not appear to us that these children will ever want for anything.

## DISPOSITION

The order is reversed insofar as it holds that an application for an order to show cause for modification of Richard's child support obligations would not violate the no contest clause. In all other respects, the order is affirmed. The trustees are awarded their costs of appeal.

Mallano, Acting P. J., and Jackson, J.,* concurred.

On June 4, 2007, the opinion was modified to read as printed above. The petition of appellant Barbara D. Bergstein for review by the Supreme Court was denied August 8, 2007, S154108.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.